859 P.2d 772

**George CRERAND, Plaintiff–Appellant,**

v.

**STATE of Arizona, Defendant–Appellee.**

**No. 1 CA–CV 91–0492.**

Court of Appeals of Arizona,
Division 1, Department D.

Aug. 31, 1993.

George Crerand, in pro. per.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, ·Criminal Div., and Lynne W. Abney, Asst. Atty. Gen., Phoenix, for defendant-appellee.

## OPINION

CLABORNE, Judge.

Appellant George Crerand appeals from the trial court's denial of his petition for special action relief. Crerand brought this action against the State, alleging that his inability to earn release or "good-time" credits for time spent in presentence custody in the county jail was a violation of his equal protection rights pursuant to Article 2, Section 13 of the Arizona Constitution and the Fourteenth Amendment of the United States Constitution. For the reasons set forth herein, we affirm.

## I. FACTS

On June 13, 1988, Crerand was sentenced to two concurrent seven and a half year sentences, both non-dangerous offenses with one prior conviction. At the time of sentencing, Crerand had spent 165 days in custody in county jail. The 165 days of presentence custody were credited against Crerand's sentence pursuant to Ariz.Rev. Stat.Ann. ("A.R.S.") section 13–709(B) (1989). Crerand remained in jail before sentencing because he was unable to make bail because of indigency.

Crerand filed a petition for special action seeking a declaration that Arizona's statutory scheme, which does not provide for the accrual of release credits with respect to time served in presentence custody because of the inability to make bail, violated Crerand's equal protection rights. The trial court subsequently dismissed Crerand's petition for special action without a trial, relying on *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973).

## II. DISCUSSION

### A. Statutory Provisions

Crerand first argues that there is no statutory prohibition against awarding release credits against time spent in presentence custody. However, the system of earning release credits in relation to time spent in custody is controlled by A.R.S. sections 41–1604.06 (Supp.1992) and 41–1604.07 (1992). *State v. Valenzuela,* 144 Ariz. 43, 46, 695 P.2d 732, 735 (1985). These statutes authorize the State Department of Corrections to establish a parole eligibility classification system. Inmates are entitled to earn release credits only if they are in classification one. A.R.S. § 41–1604.07. An inmate assigned to class one earns release credits according to the nature of the crime for which he is serving a sentence. *Valenzuela,* 144 Ariz. at 46, 695 P.2d at 735. At the time he filed his special action petition, Crerand was entitled to earn one day of credit for every three days served.

■ Because the eligibility to earn release credits is afforded only to inmates classified as parole eligible class one, and this classification cannot be attained until the inmate is actually sentenced and transferred to the Department of Corrections, it is clear that an inmate is not entitled under A.R.S. section 41–1604.07 to release credits with respect to time spent in presentence custody. Crerand conceded in pleadings before the trial court that he had no right under Arizona statute to receive release

credits with respect to his presentence custody. Therefore, Crerand is clearly incorrect in arguing here that the Arizona statutes do not prohibit such an award of release credits.

### B. Equal Protection

Crerand next argues that the failure of A.R.S. section 41–1604.07 to allow release credits against time spent in presentence custody amounts to wealth-based discrimination violating his equal protection rights. Crerand claims that the denial of release credits discriminates against those inmates who are unable to afford bail and are required to remain in custody before sentencing. Crerand claims that an inmate who is able to afford bail and is later sentenced may be entitled to earn release credits with respect to his *entire* sentence, while an inmate who does not make bail and is later given the same sentence may only earn release credits with respect to the portion of the sentence served *after* sentencing. This could result in the former inmate earning more release credits and serving less time, even though the two inmates were given the same sentence. Arizona's statutory scheme treats differently those prisoners detained before sentencing and those released on bail and Crerand claims that this different treatment violates equal protection and discriminates against persons unable to afford bail.[1]

The equal protection clauses of the state and federal constitutions have the same effect and generally require that all persons subject to state legislation shall be treated alike under similar circumstances. *Valley Nat'l Bank of Phoenix v. Glover,* 62 Ariz. 538, 159 P.2d 292 (1945). However, state statutes that treat different classes of individuals in different ways do not always result in a denial of equal protection. *Big D Const. v. Court of Appeals,* 163 Ariz. 560, 565, 789 P.2d 1061, 1066 (1990). The standard to be applied in evaluating a challenged classification varies depending on the individuals affected and the

---

1. However, the distinction drawn by the statute is not necessarily property-based, because an indictee's qualification for bail may depend on

many considerations other than his financial status. *See* A.R.S. § 13–3961 (1989) (discussing offenses not bailable).

rights involved. If the classification involves a fundamental right or affects a suspect class, the courts will subject it to strict scrutiny and will uphold the statute only if it is necessary to promote a compelling state interest. *Id.* at 566, 789 P.2d at 1067. If the statute does not affect a fundamental right or a suspect class, the courts will generally apply the rational basis test and uphold the statute provided it is rationally and reasonably related to furthering some legitimate governmental interest. *Id.* In addition, the United States Supreme Court has sometimes applied an "intermediate scrutiny" test in cases in which the statute imposes serious hardship on discrete classes of individuals not accountable for their own status. *See Plyler v. Doe,* 457 U.S. 202, 223–24, 102 S.Ct. 2382, 2398, 72 L.Ed.2d 786, *reh'g denied,* 458 U.S. 1131, 103 S.Ct. 14, 73 L.Ed.2d 1401 (1982) (court applies intermediate scrutiny test to Texas statute which withheld from local school district any state funds for education of children of illegal aliens). Pursuant to the intermediate scrutiny test, a statute will not be considered rational unless it furthers some substantial goal of the state. *Id.*

■ Crerand argues that Arizona's statutory scheme regarding the award of release credits must be analyzed under either the strict scrutiny or intermediate scrutiny tests. We disagree. First, the strict scrutiny test does not apply here because A.R.S. section 41–1604.07 does not affect either a fundamental right or a suspect class. The United States Supreme Court has held that there is no constitutional right to good-time credit. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). No Arizona court nor any other court has held that the right to good-time credit is a fundamental right. Furthermore, the United States Supreme Court has never held that indigency, standing alone, is a suspect class. *Harris v. McRae,* 448 U.S. 297, 323, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980); *Maher v. Roe,* 432 U.S. 464, 471, 97 S.Ct. 2376, 2381, 53 L.Ed.2d 484 (1977); *see also Carpio v. Tucson High School Dist. No. 1 of Pima County,* 111 Ariz. 127, 524 P.2d 948 (1974),

*cert. denied,* 420 U.S. 982, 95 S.Ct. 1412, 43 L.Ed.2d 664 (1975) (court refuses to apply strict scrutiny test to school district's failure to provide free textbooks to indigent children).

■ We also disagree with Crerand's contention that the intermediate level scrutiny test applies here pursuant to *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). In *Plyler,* the United States Supreme Court said that this standard should be applied "[o]nly when concerns sufficiently absolute and enduring can be clearly ascertained from the Constitution and our cases." *Id.* at 218, n. 16, 102 S.Ct. at 2395, n. 16. The Court in *Plyler* observed that the importance of education and the lasting impact of that education on the life of the child made the intermediate scrutiny test applicable to a Texas statute prohibiting funding for public education of children of illegal aliens. *Id.* at 220–21, 102 S.Ct. at 2396–97. Similar concerns have not been associated with the rights of people in prison to receive good-time credits. Therefore, we hold that the intermediate scrutiny test is inapplicable here. *But see Matter of Mota,* 114 Wash.2d 465, 788 P.2d 538 (1990) (court applies intermediate scrutiny test to Washington statutory scheme denying good-time credits for presentence custody).

In *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), the United States Supreme Court held that a rational basis test should be utilized in determining whether a denial of good-time credit for presentence confinement was a violation of the equal protection clause. In addition, most other states considering this issue have also employed a rational basis analysis. *See, e.g., Norris v. State,* 541 A.2d 926 (Me.1988); *State v. Aqui,* 104 N.M. 345, 721 P.2d 771 (1986), *cert. denied,* 479 U.S. 917, 107 S.Ct. 321, 93 L.Ed.2d 294 (1986); *State v. Nyborg,* 122 Wis.2d 765, 364 N.W.2d 553 (1985); *Patino v. State,* 331 N.W.2d 837 (S.D.1983); *People v. Turman,* 659 P.2d 1368 (Colo.1983); *Hampton v. Rowe,* 88 Ill.App.3d 352, 43 Ill.Dec. 511, 410 N.E.2d 511 (1980); *but see People v. Sage,*

26 Cal.3d 498, 165 Cal.Rptr. 280, 611 P.2d 874 (1980) (struck down law under strict scrutiny test). We therefore hold that the rational basis test is the appropriate test to determine the constitutionality of accrual of release credits.

The rational basis test permits the legislature much leeway in enacting legislation. The test "upholds legislative regulation which imposes burdens on one class but not another so long as (1) the court can find some legitimate state interest to be served by the legislation and (2) the facts permit the court to conclude that the legislative classification rationally furthers the state's legitimate interest." *Kenyon v. Hammer,* 142 Ariz. 69, 78, 688 P.2d 961, 970 (1984) (citations omitted). "[T]he Equal Protection Clause is not violated if any state of facts can be reasonably conceived to sustain the classification." *State v. Levy's,* 119 Ariz. 191, 192, 580 P.2d 329, 330 (1978).

*McGinnis* held that a complex New York statutory scheme which prohibited the crediting of good time on presentence confinement in calculating the offender's "minimum parole date," which was the earliest date on which the prisoner could have been paroled, was constitutional because it rationally furthered a legitimate state interest. The Court in *McGinnis* found significant differences existed between state and county jails. The New York State prisons had rehabilitation as a prime purpose and were equipped with various rehabilitative services, while the county jails were primarily detention centers. The Court held that, given this difference, it was reasonable not to award good time for pretrial detention in a county jail. The Court also stated that, even if the primary purpose of the good-time credit was to foster and maintain discipline rather than rehabilitation: "[Y]et, our decisions do not authorize courts to pick and choose among legitimate legislative aims to determine which is primary and which subordinate.... So long as the state purpose upholding a statutory class is legitimate and nonillusory, its lack of primacy is not disqualifying." *Id.* 410 U.S. at 276, 93 S.Ct. at 1062–1063.

Crerand argues that, given Arizona's mandatory sentencing scheme, punishment is the paramount purpose of sentences and rehabilitation is irrelevant. Crerand contends that since rehabilitation is irrelevant to sentencing in Arizona, *McGinnis* is distinguishable. Crerand further claims that the foremost purpose underlying Arizona's release credit scheme is to maintain prison discipline, so the only state interest furthered by not awarding such credit for presentence detention is avoidance of the administrative inconvenience of creating programs in county jails to oversee the detainee's behavior and determine if the prisoner has earned the credit. This interest, according to Crerand, does not sufficiently support the distinction made between those inmates who were released on bail and those who were detained with respect to the ability to earn release credits. However, it is clear upon review of the statutory procedure for the accrual of release credits that, even if rehabilitation is not a primary consideration in the actual sentencing, it is the primary factor with respect to the award of those credits.

As mentioned earlier, based on A.R.S. sections 41–1604.06 and 41–1604.07, only those inmates who have been classified as parole eligible class one may qualify for release credits. Inmates may not be placed initially in class one, and reclassification is based on such factors as "work performance, compliance with all rules of the department, progress in any appropriate training or treatment programs and the performance of any assignments of confidence or trust." A.R.S. § 41–1604.06(B). Inmates may remain in class one only if they exhibit "adherence to the rules of the department and continual willingness to volunteer for or successful[ly] participat[e] in a work, educational, treatment or training program established by the department." A.R.S. § 41–1604.06(C). Clearly, release credits in Arizona are not awarded simply for good behavior. The legislature formulated a program whereby release credits are predicated upon the correctional officials' evaluation of the inmate's conduct

and rehabilitative efforts.[2] As distinguished from inmates at state correctional facilities, persons held in presentence confinement are presumed innocent and are not subject to rehabilitation efforts or to compulsory labor requirements.[3] *See Aqui,* 104 N.M. at 349, 721 P.2d at 775. In addition, notwithstanding their inability to earn release credits, pretrial detainees already have an incentive to exercise good behavior because of the threat of a longer sentence. *See Norris,* 541 A.2d at 930. Given these differences between presentence custody and time served pursuant to a sentence in a state prison, Arizona's legislative scheme bears a rational relationship to the legitimate state interest in rehabilitation and discipline and does not deny Crerand equal protection of the laws. Other courts have reached the same conclusion. *See Norris,* 541 A.2d 926; *Aqui,* 721 P.2d 771; *Nyborg,* 122 Wis.2d 765, 364 N.W.2d 553; *Turman,* 659 P.2d 1368; *Patino,* 331 N.W.2d 837.

We affirm the trial court's judgment dismissing Crerand's special action petition. We deny the State's request for attorney's fees incurred on appeal because the State failed to present any case law or statutory authority that would justify such an award.

TOCI, P.J., and GRANT, J., concur.

---

**2.** In contrast, those courts that have struck down laws denying good-time credits with respect to presentence custody have generally done so because the courts found that, unlike in Arizona, the award of good-time credits in those states was unrelated to any rehabilitative purpose. *See, e.g., Matter of Mota,* 114 Wash.2d 465, 788 P.2d 538 (1990); *Hampton,* 88 Ill. App.3d 352, 410 N.E.2d 511; *Sage,* 165 Cal.Rptr. 280, 611 P.2d 874.

**3.** Although Crerand states in his brief that the Maricopa County Jail has such programs available as Alcoholics Anonymous, Narcotics Anonymous, Bible study, church services, and psychiatric and psychological counseling, he has not argued nor presented proof that rehabilitative programs are available to pretrial detainees in county jail to the extent of those available in state correctional facilities.