990 P.2d 26

John WIGGLESWORTH, Plaintiff–Appellant,

v.

Rick MAULDIN, Deputy Warden, Arizona Department of Corrections; Jane Hull, Governor of the State of Arizona, Defendants–Appellees.

No. 1 CA–CV 99–0123.

Court of Appeals of Arizona, Division 1, Department D.

Nov. 18, 1999.

John Wigglesworth, Douglas, In Propria Persona.

Janet A. Napolitano, Attorney General by S. Christopher Copple, Assistant Attorney General, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

GERBER, Judge.

¶ 1 John Wigglesworth filed a complaint against Governor Jane Hull and Deputy Warden Rick Mauldin of the Arizona Department of Corrections alleging violation of his constitutional rights when former Governor J. Fife Symington III declined to commute his sentences. He appeals from the trial

court's dismissal of his complaint for failure to state a claim upon which relief could be granted.[1]

## FACTS AND PROCEDURAL HISTORY

¶ 2 In reviewing the trial court's dismissal, we take the material allegations of the complaint as true. *See Aldabbagh v. Arizona Dep't of Liquor Licenses and Control,* 162 Ariz. 415, 417, 783 P.2d 1207, 1209 (App. 1989). According to the complaint, Wigglesworth was sentenced in 1994 to three concurrent life sentences for two counts of possession of a narcotic drug for sale and one count of transportation of a narcotic drug for sale. These sentences were enhanced pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 13–604.02 (1989), which provides that felons who commit certain offenses during probation, parole or any other release from confinement for another felony shall be sentenced to life imprisonment without early release.[2] He was also sentenced to a five year concurrent term for money laundering.

¶ 3 Wigglesworth applied to the Arizona Board of Executive Clemency (the "Board") for a commutation of his sentences. At a hearing on March 7, 1995, the Board recommended that his sentences be reduced to eight years and submitted this recommendation to Governor Symington, who for unknown reasons declined to follow it.

¶ 4 Wigglesworth then filed this suit claiming that his constitutional rights had been violated. The trial court granted the defendants' motion to dismiss pursuant to Rule 12(b)(6), Arizona Rules of Civil Procedure ("Rule"), and dismissed the complaint with prejudice. Wigglesworth then filed a motion to vacate the judgment pursuant to Rule 59, which was also denied. This appeal followed.

## DISCUSSION

**Due Process Claim**

■ ¶ 5 Wigglesworth first argues that the trial court improperly dismissed his com-

---

1. In his reply brief, Wigglesworth concedes that Mauldin was not responsible for commutation of his sentences and therefore apparently withdraws his appeal as to that defendant.

2. The statute was amended effective January 1, 1994 and currently provides that a person con-

victed of a felony (other than those listed in subsection A of the statute) committed while on probation or parole for the conviction of another felony shall be sentenced to not less than the presumptive sentence. *See* A.R.S. § 13–604.02(B) (Supp.1998).

plaint because, in his view, it states a valid claim for violation of his due process rights. The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects individuals against government actions that deprive them of liberty or property. *See Banks v. Arizona State Bd. of Pardons & Paroles,* 129 Ariz. 199, 200, 629 P.2d 1035, 1036 (App.1981). Liberty interests protected by the Due Process Clause may arise from the clause itself or state laws. *See Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In order for an interest to be protected by this clause, the concerned person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

¶ 6 An inmate's interest in commutation of his sentence does not by itself trigger due process protections because there is no entitlement to reduction of a valid sentence. *See Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981); *Banks,* 129 Ariz. at 201, 629 P.2d at 1037. Once an inmate has been lawfully convicted and sentenced to imprisonment, his liberty interest in freedom from confinement ends and his petition for commutation becomes "simply a unilateral hope." *Dumschat,* 452 U.S. at 464–65, 101 S.Ct. 2460. However, if state statutes mandate commutation or parole via specified criteria, an interest protected by the Due Process Clause may arise. *See, e.g., Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Wigglesworth claims that our legislature's adoption of a disproportionality review of sentencing by the Board creates a liberty interest in relief from his excessive sentence such that Governor Sym-

ington's denial of the Board's recommendation results in an unconstitutional deprivation of his liberty interest.

¶ 7 In 1994, our legislature created a procedure for disproportionality review to "equalize some of the disparity between sentences imposed under the former sentencing statutes and those imposed under the revised statutes." *State v. Nguyen,* 185 Ariz. 151, 152, 912 P.2d 1380, 1381 (App.1996); *see* 1994 Ariz. Sess. Laws, Ch. 365, § 1. For felony offenses prior to December 31, 1993, inmates with certain eligibility requirements could apply to have their disproportionate sentences reduced or commuted. *See* 1994 Ariz. Sess. Laws, Ch. 365 § 1(A). After a hearing, the Board could recommend to the governor that a "clearly excessive" sentence be commuted or reduced. *See Nguyen* at 152, 912 P.2d at 1381; 1994 Ariz. Sess. Laws, Ch. 365 §§ 1(B), (F).

¶ 8 Wigglesworth now argues that, once the Board determined that his sentences were excessive and recommended that Governor Symington reduce them to eight years, he had a justifiable expectation that his sentences would in fact be reduced and that this expectation was protected by the Due Process Clause. While equity might support that result, our present law of commutation does not. Although the disproportionality review procedure contains mandatory standards governing the Board's conduct and establishes defined criteria for its determinations, it establishes no corresponding criteria whatsoever for the governor's response to the Board's recommendation. The governor's discretion to grant or deny commutation remains totally unfettered.[3] *See Woratzeck v. Arizona Bd. of Exec. Clemency,* 117 F.3d 400, 403 (9th Cir.1997); A.R.S. § 31–443 (1996)("[t]he governor, subject to any limitations provided by law, may grant

---

**3.** The procedure does provide that the Board's unanimous recommendation for commutation will automatically become effective if the governor fails to act on the recommendation within ninety days after receiving it. *See* 1994 Ariz. Sess. Laws, Ch. 365, § 1(G). Wigglesworth does not argue that this section applies here. Although he alleges that his hearing before the Board occurred on March 7, 1995, and that Governor Symington denied his application on

August 31, 1995, he never alleges that Governor Symington received the Board's recommendation more than ninety days prior to acting on it. In fact, a document attached to his opening brief states that, although the Board recommended commutation of his sentence in March, the "packet" was not transmitted to the governor until June 7, 1995, which makes the August 31, 1995 decision within the 90–day period.

reprieves, commutations and pardons, after conviction, for all offenses, except impeachment, upon conditions, restrictions and limitations he deems proper").

¶ 9 Arizona's present unstructured gubernatorial commutation procedure thus exposes "the heart of executive clemency, which is to grant clemency as a matter of grace." *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, 118 S.Ct. 1244, 1250, 140 L.Ed.2d 387 (1998) (Rehnquist, C.J., plurality). Historically, commutation and clemency decisions have belonged wholly to the executive. Clemency in America "is rooted in the traditions of England." David S. Olson, Comment, *Second Guessing the Quality of Mercy: Due Process in State Executive Clemency Proceedings,* 22 Harv. J.L. & Pub. Pol'y 1009, 1021 (Summer 1999) ("Olson"). In colonial America, governors exercised unlimited clemency powers in their capacity as royal representatives. The framers of our federal Constitution, noting that the King's clemency power was practically absolute, adopted that model for clemency decisions. The states then accorded their elected governors the clemency power exercised by the colonial governors. *See id.; see also* Ariz. Const. art. 5, § 5.

¶ 10 Given this history, courts traditionally have taken the position that clemency lies outside the adjudicative process and generally escapes review by the courts.[4] *See, e.g., Dumschat,* 452 U.S. at 464, 101 S.Ct. 2460 ("pardon and commutation decisions have not traditionally been the business of the courts"); *Solesbee v. Balkcom,* 339 U.S. 9, 12, 70 S.Ct. 457, 94 L.Ed. 604 (1950); *Rosenberg v. United States,* 346 U.S. 322, 73 S.Ct. 1178, 97 L.Ed. 1633 (1953) (Frankfurter, J. concurrence); *United States ex rel. Kaloudis v. Shaughnessy,* 180 F.2d 489, 491 (2d Cir.1950) (L.Hand, J.); *United States v. Soeder,* 120 F.Supp. 594, 595–96 (N.D.Ill.1954). In fact,

"[s]ome have argued that clemency operates as a check on the courts precisely because it is outside of the adjudicatory system." Olson, *supra* ¶ 9 at 1022.

■ ¶ 11 Because the legislature's disproportionality review standards place no substantive limitations on an Arizona governor's discretion to grant or deny commutation via standards similar to the standards imposed on the Board, it places a governor's commutation decision outside the adjudicatory process. *See id.,* at 1023. This procedure also fails to create a protected liberty interest regardless of the Board's recommendation of commutation. *See Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (if the official need not base its decision on objective criteria but can deny the requested relief for any constitutionally permissible reason or no reason, "the State has not created a constitutionally protected liberty interest"). *See also Woodard,* 118 S.Ct. at 1250–51 (no expectation of clemency created where, despite parole authority's mandatory clemency procedures, the ultimate decisionmaker, the governor, retains broad discretion) (Rehnquist, C.J., plurality).

¶ 12 In reviewing a motion to dismiss, we determine whether the complaint, construed in a light most favorable to the plaintiff, sufficiently sets forth a valid claim. *See Aldabbagh,* 162 Ariz. at 417–18, 783 P.2d at 1209–10. Because Wigglesworth had no protected liberty interest in gubernatorial action consistent with the Board's recommendation, the trial court correctly held that his complaint failed to state a claim of violation of an established due process right.

**Eighth Amendment Claim**

¶ 13 Wigglesworth next argues that his complaint properly claimed a violation of the Eighth Amendment guarantee against cruel

4. A majority of the Supreme Court believes that, with respect to death penalty cases, at least a limited due process review applies to clemency proceedings because an inmate's life interest deserves more protection than a liberty interest in release from confinement, and that life interest cannot be extinguished by the same process as a liberty interest. *See Woodard,* 118 S.Ct. at 1253–55 (O'Connor, J., concurring in part and concurring in the judgment, and Stevens, J., concurring

in part and dissenting in part). However, Justice O'Connor, in whose concurrence in *Woodard* Justices Souter, Ginsburg and Breyer joined, recognized that under previous Supreme Court cases, an inmate seeking commutation of a life sentence or discretionary parole has no protected liberty interest in release from lawful confinement. 118 S.Ct. at 1253–54. In any event, the instant case does not involve the death penalty.

and unusual punishment. He claims that, because the current sentencing scheme would impose much lesser sentences on him, his life sentences without possibility of parole grossly exceed his culpability. Therefore, he reasons, Governor Symington's denial of his clemency application violated his Eighth Amendment rights. Again, for similar reasons, we disagree.

¶ 14 The Eighth Amendment of the United States Constitution and art. 2, § 15 of the Arizona Constitution prohibit the infliction of cruel and unusual punishment. However, "what is cruel and unusual is not so clear." *State v. DePiano*, 187 Ariz. 27, 29, 926 P.2d 494, 496 (1996). In *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the United States Supreme Court held that it did not constitute "cruel and unusual punishment" to impose a life sentence, under a Texas recidivist statute, upon a defendant who had been successively convicted of a fraudulent use of a credit card to obtain $80 of goods and services, passing a forged check in the sum of $28.36, and obtaining $120.75 by false pretenses. The court stated that for crimes classified as felonies and punishable by imprisonment, "the length of the sentence actually imposed is purely a matter of legislative prerogative." *Id.* at 274, 100 S.Ct. 1133.

¶ 15 Notwithstanding this legislative prerogative, the Supreme Court has recognized that the Eighth Amendment does forbid extreme sentences grossly disproportionate to culpability.[5] *See Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., plurality). However, "the prohibition against cruel and unusual punishment embodies a very narrow proportionality principle." *DePiano*, 187 Ariz. at 30, 926 P.2d at 497.

■ ¶ 16 In assessing gross disproportionality, a court should focus on the offense generally without analyzing the particular circumstances of the crime or the offender. *See id.* In *Harmelin*, the Supreme Court held that even a sentence of life imprisonment without possibility of parole for posses-

sion of 672 grams of cocaine did not violate the Eighth Amendment, because, given the correlation between drugs and crime, "the Michigan Legislature could with reason conclude that the threat posed to the individual and society by possession of this large an amount of cocaine—in terms of violence, crime, and social displacement—is momentous enough to warrant the deterrence and retribution of a life sentence without parole." 501 U.S. at 1002–05, 111 S.Ct. 2680.

■ ¶ 17 Like the sentence in *Harmelin*, Wigglesworth's harsh life sentences for two counts of possession of a narcotic drug for sale and one count of transportation of a narcotic drug for sale did not violate the *Harmelin* gloss on the Eighth Amendment, a conclusion more ineluctable given that he was sentenced under a recidivist statute. As the Court noted in *Rummel*, recidivist statutes such as the one applying to Wigglesworth reflect the states' interest "in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." 445 U.S. at 276, 100 S.Ct. 1133.

■ ¶ 18 Given this current interpretation of the Eighth Amendment, it is irrelevant to Wigglesworth's claim that our legislature revised the sentencing scheme after the commission of his crimes and that the Board's careful analysis found his sentence "excessive" compared to the current penal scheme. The fact that penalties for his crimes have recently been reduced does not render his punishment under earlier statutes "cruel and unusual." The legislature expressly provided that the revised A.R.S. section 13–604.02 would not affect persons convicted of an offense committed before January 1, 1994. *See* 1993 Ariz. Sess. Laws, Ch. 255, § 101. Notwithstanding the revisions to this statute, because Wigglesworth's sentences under the previous statute did not constitute cruel and unusual punishment, the trial court properly held that his complaint

---

5. Justice Scalia went so far as to say that the Eighth Amendment contains no proportionality guarantee. 501 U.S. at 965, 111 S.Ct. 2680.

Only Chief Justice Rehnquist concurred with Justice Scalia's conclusion.

failed to state a claim for violation of the Eighth Amendment.

## Equal Protection Claim

¶ 19 Wigglesworth also contends that his complaint set forth a claim for violation of his equal protection rights because Governor Symington arbitrarily commuted the sentences of some other inmates but not his. The equal protection clauses of the state and federal constitutions "generally require that all persons subject to state legislation shall be treated alike under similar circumstances." *Crerand v. State*, 176 Ariz. 149, 151, 859 P.2d 772, 774 (App.1993). The state may treat different classes of people in different ways provided the classification is reasonable. *See State v. Beckerman*, 168 Ariz. 451, 453, 814 P.2d 1388, 1390 (App. 1991). If a classification involves a fundamental right or a suspect or quasi-suspect class, we subject it to strict scrutiny and uphold it only if it is necessary to promote a compelling state interest. *See Crerand*, 176 Ariz. at 152, 859 P.2d at 775. We uphold legislation not involving a suspect classification or fundamental right when it is rationally related to a legitimate government purpose. *See Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 350, 842 P.2d 1355, 1363 (App.1992).

¶ 20 Wigglesworth does not claim that he was improperly denied access to the disproportionality review procedure or that the Board erred in applying the statutory criteria it must follow. He argues instead that the governor treated him differently from others sentenced under the same sentencing scheme with similar offenses and similar sentences, because some of these other inmates succeeded in having their sentences reduced. He now claims that the governor must treat in the same way all inmates having the criteria defined in the disproportionality review procedure for commutation recommendation. He also claims that we must apply strict scrutiny in examining the governor's commutation decisions because a fundamental right is implicated regarding a member of a "suspect class," i.e.

those to whom the disproportionality review procedure intended to give relief.

¶ 21 Though Wigglesworth may well be one to whom the disproportionality review procedure intended relief, we must disagree that Arizona's clemency law at present mandates that result. In the first place, he had no liberty interest in the reduction of his sentence. Therefore, no fundamental right is implicated. In addition, he is not part of a suspect class. *Cf. Nguyen*, 185 Ariz. at 153, 912 P.2d at 1382 (defendant who received sentence of less than seven years and so was excluded from disproportionality review was not member of suspect class). Therefore, we would ordinarily test the government's "classification" by the rational basis test, though we question whether there was any classification here at all. *Id.* at 154, 912 P.2d at 1383.

¶ 22 Moreover, while the statutory criteria applying to the Board could be made to apply to the governor, they do not do so at present. The Board's structured review does not inhibit a governor's unstructured decision to grant or deny commutation. While the legislature has mandated precise procedures for the Board, it has not done so for the governor's handling of its recommendations.[6] The backbone of this state's present commutation procedure is that, despite the Board's adherence to defined criteria, a governor may nonetheless subjectively consider each case arbitrarily. Therefore, Governor Symington could consider each recommendation by the Board independently and dispose of each simply as he wished. *Cf. Dumschat*, 452 U.S. at 464, 101 S.Ct. 2460 ("whether to commute a long-term sentence generally depends not simply on objective factfinding, but also on purely subjective evaluations and on predictions of future behavior by those entrusted with the decision"); *Schick v. Reed*, 419 U.S. 256, 268, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974) ("Individual acts of clemency inherently call for discriminating choices because no two cases are the same."). Although he may have had reasons for following the recommendations of the Board in some instances but not in others, we do not know what those reasons were, and Arizona's

---

6. The governor's power to grant or refuse commutation may be limited by the legislature. *See*

*State v. Marquez*, 127 Ariz. 98, 103, 618 P.2d 592, 597 (1980) (interpreting Ariz. Const. art. 5, § 5).

present commutation procedure requires him neither to have reasons nor to express them nor to treat applicants even-handedly.

¶ 23 Other inmates' receipt of clemency or commutation generates no right to it. In *Dumschat*, the plaintiff argued that the fact that at least seventy-five percent of all "lifers" received some favorable action from the pardon board and that virtually all pardoned inmates were promptly paroled created a constitutionally protected expectancy of commutation. The Supreme Court disagreed, stating:

> No matter how frequently a particular form of clemency has been granted, the statistical probabilities standing alone generate no constitutional protections; a contrary conclusion would trivialize the Constitution. The ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising clemency.

452 U.S. at 465, 101 S.Ct. 2460.

¶ 24 Similarly, Governor Symington's agreement to commute the sentences of others convicted of crimes similar to Wigglesworth's generates for him neither constitutional protections nor equal protection rights. Under our present law an Arizona governor's discretion to act on the Board's recommendations remains unfettered, subjective, arbitrary, and a matter of grace. We conclude that Wigglesworth's claim was properly dismissed for failure to state a claim.

**Failure to Give Statement of Complaint's Deficiencies**

¶ 25 Wigglesworth last argues that the trial court erred in dismissing his complaint without first supplying him with a statement of the complaint's deficiencies, or, at the least, granting him leave to amend. He primarily relies on a federal case reversing a trial court's dismissal of a prisoner's pro se complaint alleging constitutional violations when the court failed to notify the plaintiff of the complaint's deficiencies so he could amend. *See Noll v. Carlson*, 809 F.2d 1446 (9th Cir.1987). However, the holding in *Noll*

likely succumbs to 1996 amendments to the federal Prison Litigation Reform Act that mandate dismissal of complaints of pro se prisoner-litigants filing *in forma pauperis* under certain circumstances. *See Acker v. CSO Chevira*, 188 Ariz. 252, 254, 934 P.2d 816, 818 (App.1997). In any event, no universal requirement exists in Arizona law that a trial court granting an opposed motion to dismiss make findings explaining its action.

■ ¶ 26 Before the trial court grants a Rule 12(b)(6) motion to dismiss, the non-moving party should be given an opportunity to amend the complaint if such an amendment cures its defects. *See Sun World Corp. v. Pennysaver, Inc.*, 130 Ariz. 585, 589, 637 P.2d 1088, 1092 (App.1981). Wigglesworth claims that the wording of the trial court's order of January 21, 1999 dismissing the complaint "leads to a reasonable inference that a more carefully drafted complaint would have satisfied the requirement for complaint that ha[s] stated a claim for relief." However, the court's order simply states: "The Court, having reviewed the pleadings, grants the motion to dismiss. The Court finds that the complaint does not state a claim upon which relief may be granted. The complaint is dismissed with prejudice."

■ ¶ 27 First, we note that, in opposing the defendants' motion to dismiss, Wigglesworth never sought leave to amend the complaint.[7] He first mentioned the possibility of amending in his Rule 59 motion after dismissal occurred. Secondly, given our present law as described above, we cannot imagine that an amendment could cure the legal defects of his complaint. Because of the governor's unfettered clemency discretion, Wigglesworth simply has no cognizable claim of constitutional violation in being denied commutation. Therefore, the trial court did not err in failing to give him an opportunity to amend his complaint.

**CONCLUSION**

¶ 28 We affirm the trial court's dismissal of Wiggleworth's complaint for failure to state a

---

7. He did amend the complaint once prior to the filing of the motion to dismiss.

claim upon which relief could be granted. The trial court also did not err in failing to make findings explaining the complaint's deficiencies or denying him leave to amend.

CONCURRING: EDWARD C. VOSS, Presiding Judge, JEFFERSON L. LANKFORD, Judge.