19 P.3d 613

**STATE of Arizona, Appellee,**

v.

**Anthony Gary BOMAR, Appellant.**

No. 1 CA–CR 99–0792.

Court of Appeals of Arizona,
Division 1, Department E.

Feb. 16, 2001.

As Amended Feb. 20, 2001.

Redesignated as Opinion and Publication Ordered Feb. 22, 2001.

Review Denied May 23, 2001.

474

Maricopa County Public Defender by Anna M. Unterberger, Deputy Public Defender, Phoenix, Attorneys for Appellant.

Janet A. Napolitano, Arizona Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, Attorneys for Appellee.

## OPINION

ACKERMAN, Judge.

¶ 1 The sole issue on appeal is whether the trial court erred in denying Anthony Gary Bomar's request for pre-sentence incarceration credit under Arizona Revised Statutes Annotated ("A.R.S.") section 13–709(B) (1989). Because we conclude that the pre-sentence incarceration credit provisions of A.R.S. section 13–709(B) do not apply to commitment orders, we find no error and affirm the sentence.

## BACKGROUND

¶ 2 Bomar was charged with one count of aggravated assault, a class 3 dangerous felony, pursuant to A.R.S. section 13–1204(A)(2) (Supp.1996), for a crime alleged to have occurred on July 10, 1997. The State later

withdrew the allegation of dangerousness, and Bomar waived his right to a jury trial and submitted his case to the trial court. The trial court found Bomar guilty-except-insane.

¶ 3 At sentencing, Bomar requested that he receive credit for the 741 days he had spent in custody prior to sentencing. The court denied the request and committed Bomar to a secure mental health facility under the jurisdiction of the Department of Health Services for the presumptive term of three and one-half years, in accordance with the provisions of A.R.S. section 13–3994 (Supp. 2000–2001), with no pre-sentence incarceration credit.

¶ 4 Bomar filed this appeal. We have jurisdiction pursuant to article 6, section 9, of the Arizona Constitution and A.R.S. sections 12–120.21(A)(1) (1992), 13–4031 (1989), and 13–4033(A) (Supp.2000–2001).

## DISCUSSION

¶ 5 Bomar contends that, pursuant to A.R.S. section 13–709(B), he is entitled to credit for pre-sentence incarceration against the period of his commitment. He asserts three grounds in support of his claim: (1) that the statutory scheme requires that he receive pre-sentence incarceration credit; (2) that failure to grant him pre-sentence incarceration credit violates his rights to equal protection and due process; and (3) that the American Bar Association ("ABA") Criminal Justice Mental Health Standards (1994) indicate that he should receive the credit as a matter of fairness.[1] Because these issues involve statutory construction and constitutional law, we review the trial court's rulings *de novo. See Ramirez v. Health Partners of S. Ariz.,* 193 Ariz. 325, 327–28, ¶ 6, 972 P.2d 658, 660–61 (App.1998).

### I. Arizona Law

#### A. *The Statutes*

¶ 6 In interpreting statutes, our primary goal is to determine and give effect to the legislative intent. *See State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990).

"We look primarily to the language of the statute itself and give effect to the statutory terms in accordance with their commonly accepted meanings." *State v. Riggs,* 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997). "When the statute's language is not clear, we determine legislative intent by reading the statute as a whole, giving meaningful operation to all of its provisions, and by considering factors such as the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

¶ 7 Bomar relies on A.R.S. section 13–709(B), which governs credit for pre-sentence incarceration credit:

> All time actually spent in custody pursuant to an offense until the prisoner is *sentenced to imprisonment* for such offense shall be *credited against the term of imprisonment* otherwise provided for by this chapter.

(Emphasis added.) Nothing in the plain language of the statute allows credit for pre-sentence incarceration against a period of hospital commitment. By its terms, pre-sentence incarceration credit applies to a term of "imprisonment" resulting from a criminal conviction "otherwise provided for by this chapter." *Id.; see also* A.R.S. §§ 13–701 to –710 (1989 & Supp.2000).

¶ 8 A finding of guilty-except-insane is not a criminal conviction, *see State v. Heartfield,* 196 Ariz. 407, 408–09, ¶ 6, 998 P.2d 1080, 1081–82 (App.2000); *see also* A.R.S. § 13–502(E) (Supp.2000–2001), nor has Bomar been sentenced to a term of imprisonment "otherwise provided for by [chapter 7 of title 13]." Instead, he has been committed to a mental health facility for treatment pursuant to A.R.S. section 13–3994. Case law and statutes have long distinguished between conviction and commitment. For example, in determining the presumptive commitment term, courts "shall not consider the sentence enhancements for prior convictions ." A.R.S. § 13–502(D) (Supp. 2000–2001). Similarly, a guilty-except-insane

---

1. Bomar raised this issue by appending a copy of the Criminal Justice Mental Health Standards to a pro per motion to expedite the decision in this case.

verdict may not be used as a prior conviction to enhance subsequent convictions. *Id.* § 13–502(E). In *Heartfield,* we specifically held that because a guilty-exceptinsane verdict is not a conviction, a defendant so found cannot be required to pay restitution. 196 Ariz. at 408, ¶ 6, 410, ¶¶ 9–10, 998 P.2d at 1081, 1083 (citing A.R.S. §§ 13–804(A) (Supp. 2000), 13–603 (Supp.2000)). Bomar cannot seek to reap the benefit of a conviction-entitlement to pre-sentence incarceration credit-but avoid the detriments-future sentencing enhancement, payment of restitution, and imprisonment.

¶ 9 Upon a determination that a defendant has committed a criminal act but is insane, the statutes pursuant to which Bomar was adjudicated permit the imposition of rehabilitative alternatives more humane than incarceration. *See State v. Ovind,* 186 Ariz. 475, 477, 924 P.2d 479, 481 (App.1996); *see also* A.R.S. § 13–709(B). The period of commitment pursuant to A.R.S. section 13–3994(A) serves the express purpose of treatment, not punishment. Moreover, treatment occurs under the jurisdiction of the Department of Health Services, not the Department of Corrections. *See Ovind,* 186 Ariz. at 479, 924 P.2d at 483. For all these reasons, although they share the feature of involuntariness, commitment and incarceration are not the same. Because Bomar has not been sentenced to imprisonment, we find no merit to his argument that A.R.S. section 13–709(B) requires pre-sentence incarceration credit against his term of hospital commitment.

¶ 10 This conclusion is reinforced by the policy and language of the relevant commitment statutes. Those statutes provide for the commitment of persons found guilty-except-insane for the period a defendant could have received for the crime involved. *See* A.R.S. § 13–502(D). If, as here, the criminal act involved the threat of death or serious physical injury to another, the person is placed under the jurisdiction of the psychiatric security review board for a period equal to that of the presumptive criminal sentence. *See id.* The length of actual commitment, however, need not last as long as the analo-

gous prison sentence. The law provides for hearings and potential early release:

> If the person proves by clear and convincing evidence that the person no longer suffers from a mental disease or defect and is not dangerous, the psychiatric security review board shall order the person's release.

A.R.S. § 13–3994(F)(2); *see also Ovind,* 186 Ariz. at 479, 924 P.2d at 483 ("The statute does not subject the Defendant to confinement for any term of years" because she "may be released conditionally or unconditionally when the board is persuaded that she is free of mental illness and no longer a threat to society.").

¶ 11 The period of commitment may also exceed the time provided by the sentencing statute. If the person is still suffering from a mental disease or defect when the time provided by the sentencing statute expires, the board may refer the person to the county attorney for civil commitment proceedings:

> At least fifteen days before a hearing is scheduled to consider a person's release, or before the expiration of the board's jurisdiction over the person, the state mental health facility or supervising agency shall submit to the psychiatric security review board a report on the person's mental health. The psychiatric security review board shall determine whether to release the person or to order the county attorney to institute civil commitment proceedings pursuant to title 36.

A.R.S. § 13–3994(I).

¶ 12 Thus, the term of a commitment pursuant to A.R.S. section 13–3994 is uncertain: It could be less than the time provided by the sentencing statute or, if the State seeks a civil commitment near the end of the commitment term, it could be more. The need for treatment entirely determines the length of commitment. Commitment ends when the psychiatric security review board finds that the person no longer suffers from a mental disease or defect and is no longer dangerous. A.R.S. § 13–3994(F). Because society's goals are treatment and cure, the concept of pre-sentence incarceration credit does not fit the context of section 13–3994. The legislature obviously did not intend to release a

person before treatment is successfully completed. Indeed, the legislature has expressly forbidden any release before the person's mental condition no longer renders him a danger to himself or others:

> If the psychiatric security review board finds that the person still suffers from a mental disease or defect and is dangerous, the person shall remain committed at the secure state mental health facility.

A.R.S. § 13–3994(F)(1). Thus the statutory scheme reflects the legislature's intent that the length of commitment terms relate to a person's rehabilitation. For that reason, the legislature did not intend that pre-sentence incarceration credits apply to reduce the term of mental health commitment.

### B. *Case Law*

¶ 13 Bomar compares his situation to that of the defendant in *State v. Ritch* who was awarded pre-sentence incarceration credit on appeal. 160 Ariz. 495, 774 P.2d 234 (App. 1989). Ritch was arrested as a juvenile but, after a transfer hearing, was ultimately convicted and sentenced to prison as an adult. *Id.* at 496, 774 P.2d at 235. The trial court refused to grant Ritch pre-sentence incarceration credit for the time he was detained before being transferred and granted him credit only for time spent in custody after transfer. *Id.* Pursuant to section 13–709 and as a matter of equal protection, we held that Ritch was entitled to credit for all of the time he spent in custody. *Id.* at 497–98, 774 P.2d at 236–37.

¶ 14 *Ritch* would be analogous if Bomar were sentenced to a prison term following his commitment. Under some circumstances, a person civilly committed pursuant to A.R.S. section 13–606 (1989) may undergo treatment and then be returned to serve the balance of sentence in prison. That statute, which allows treatment then incarceration, contains its own credit provisions for pre-sentence incarceration or commitment. *See* A.R.S. § 13–606(B). The commitment procedure of section 13–606, however, was not used in the present case.

¶ 15 Our research has shown only one published state appellate decision applying pre-sentence incarceration credit toward a term of commitment. That opinion emanates from California, whose statutes require that such credit be given. *See People v. Mord,* 197 Cal.App.3d 1090, 243 Cal.Rptr. 403, 409 (1988). As discussed above, Arizona's statutory scheme does not require that guilty-except-insane defendants receive pre-sentence incarceration credit against their term of commitment. *See supra* ¶¶ 6–12. Based as it is on California's unusual statutory scheme, *Mord* is inapplicable here.

¶ 16 Neither these cases nor the statutes compel the conclusion that an award of pre-sentence incarceration credits is appropriate. We therefore hold that the pre-sentence incarceration credit provisions of A.R.S. section 13–709 are inapplicable to commitment proceedings under section 13–3994(D).

## II. Constitutional Issues

¶ 17 Bomar contends that denying pre-sentence incarceration credit violates his rights to equal protection and due process under the Arizona and United States Constitutions. We begin our analysis with a strong presumption that laws are constitutional, *see State v. McDonald,* 191 Ariz. 118, 120, ¶ 11, 952 P.2d 1188, 1190 (App.1998), and conclude that Bomar has failed to demonstrate a constitutional infirmity.

### A. *Equal Protection*

¶ 18 With respect to his equal protection claim, Bomar states that the failure to grant pre-sentence incarceration credit impermissibly creates two classes of defendants. First, Bomar claims that the failure to grant pre-sentence incarceration credit allows disparate treatment between criminal defendants who are sane and those who are adjudicated guilty-except-insane. Second, Bomar asserts that he was treated disparately because of his lack of wealth, which, he claims, resulted in his inability to post bond and allowed the continued accumulation of unusable pre-sentence incarceration credits. We address the arguments in turn.

¶ 19 Without citation to authority, Bomar argues that he has been "penalized" for being found insane because he may serve a longer term of commitment than he would

have if he had been found sane and imprisoned. This classification, he argues, deprives him of equal protection. We have held that not all classifications are impermissible under the Equal Protection Clause. *See Martin v. Reinstein,* 195 Ariz. 293, 309, ¶ 50, 987 P.2d 779, 795 (App.1999). Traditionally, courts have applied the rational basis test to equal protection arguments that contest different treatment for differing classes of mentally ill patients and prisoners. *See id.,* 195 Ariz. at 310–11, ¶¶ 53–55, 987 P.2d at 796–97. Bomar has failed to show why we should not apply a similar test here.

¶ 20 To find a violation of the Equal Protection Clause, we must find that Bomar is similarly situated to those with whom he claims the right of equal treatment. *See id.* Bomar has failed to show that he and other guilty-except-insane defendants are similarly situated with defendants who are both guilty and sane or that the classification itself is unjustified. We have implied that commitment of insane defendants to a mental health facility allows "a rational and more humane treatment of the insane offender" than incarceration, *Ovind,* 186 Ariz. at 477, 924 P.2d at 481, and have further held that civil commitment for treatment purposes is rehabilitative, not punitive. *See Martin,* 195 Ariz. at 307, ¶ 36, 987 P.2d at 793. Thus, Bomar is not "similarly situated" to defendants who are sentenced to prison.

¶ 21 Moreover, the differing treatment of the class has a rational basis. Defendants do not receive treatment during pre-sentence incarceration, and because defendants who have been adjudicated guilty-except-insane are not to be released from commitment until they have remedied the reason for their commitment, there is a rational basis for not automatically applying pre-sentence incarceration credit to guilty-except-insane defendants.

¶ 22 Second, Bomar argues that the failure to grant credit for pre-sentence incarceration to defendants who cannot afford bail constitutes wealth-based discrimination. For this proposition he cites *State v. Warde,* 116 Ariz. 598, 600–01, 570 P.2d 766, 768–69 (1977), and *State v. Sutton,* 21 Ariz.App. 550,

551, 521 P.2d 1008, 1009 (1974), which held that, as a matter of equal protection, a criminal defendant "must be credited with presentence jail time when such time, if added to the maximum sentence imposed, will exceed the maximum statutory sentence." *But see Crerand v. State,* 176 Ariz. 149, 152–53, 859 P.2d 772, 775–76 (App.1993) (applying rational basis test to question whether indigent defendants are denied equal protection because they do not receive "good-time" credit for time spent in custody pending sentencing). Decisions such as *Warde* and *Sutton* are inapplicable, however, because they are based on a different statutory scheme from that under which Bomar was sentenced. They therefore do not apply to Bomar's situation and do not inform the analysis of this case. Bomar has not been adjudicated guilty; he has not been sentenced to a definite term of "imprisonment"; and he has not been sentenced to a maximum term. *Warde* and *Sutton* therefore do not govern this case.

¶ 23 As discussed above, Defendant has not been sentenced to imprisonment, but rather has been committed to a hospital for treatment. *See* A.R.S. § 13–3994(D). The initial length of the Department's jurisdiction over a person does not necessarily determine the duration of the commitment. Notwithstanding the original commitment term set by the trial court, the person will be released from confinement as soon as, but not before, that person is determined to be free from mental illness and no longer poses a danger to society. *See* A.R.S. § 13–3994(I); *Ovind,* 186 Ariz. at 479, 924 P.2d at 483. No provision of the federal or state constitution requires release of a person who continues to suffer from a mental disease or defect and poses a danger. *See Jones v. United States,* 463 U.S. 354, 368–69, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) (commitment may constitutionally exceed the maximum sentence for the crime); *United States v. Sahhar,* 56 F.3d 1026, 1029 (9th Cir.1995) (federal commitment may constitutionally exceed maximum sentence); *Ovind,* 186 Ariz. at 479, 924 P.2d at 483 (commitment to the jurisdiction of the psychiatric security review board until free from mental illness does not violate due process); *Martin,* 195 Ariz. at 309–12, ¶¶ 49–61,

987 P.2d at 795–98 (indefinite commitment under Sexually Violent Persons Act does not violate due process or equal protection). On the other hand, a person found guilty-except-insane may be freed before the initial commitment term has expired if he shows that he is well and no longer poses a danger to society.

¶ 24 Thus, we conclude that because commitment serves a rehabilitative purpose unrelated to incarceration, it is not imprisonment. And because release from commitment depends upon recovery from the mental condition causing the commitment rather than merely serving a set number of days, a rational basis exists for not applying pre-sentence incarceration credit toward Bomar's civil commitment.

### B. *Due Process*

¶ 25 Bomar also claims that failure to credit him with presentence incarceration credit violates his right to due process. However, Bomar fails to address whether he asserts a procedural due process claim, a substantive due process claim, or both.

¶ 26 Bomar has not alleged that the statutory scheme at issue is vague. *See Martin*, 195 Ariz. at 317, ¶ 79, 987 P.2d at 803. And having reviewed the record, we see no irregularities in the procedures employed. Thus we conclude that Bomar has suffered no procedural due process violation. With respect to substantive due process, Bomar has failed to complain of arbitrariness or conduct that "shocks the conscience." *See id.* at 314, ¶ 66, 987 P.2d at 800.

¶ 27 Because Bomar has failed to properly raise a due process claim supported by authority, we do not further consider this issue. *Paros v. Hoemako Hosp.*, 140 Ariz. 335, 338, 681 P.2d 918, 921 (App.1984) (court will not address arguments unsupported by legal authority). Moreover, the United States Supreme Court has held that due process is not violated by the disparate treatment between sane and insane defendants, holding that commitment for the latter group may constitutionally exceed the maximum sentence for the crime. *See Jones*, 463 U.S. at 368–69, 103 S.Ct. 3043 (applying rational basis test).

### III. The ABA Guidelines

¶ 28 Finally, Bomar impliedly requests that we consider his appeal in light of the ABA Criminal Justice Mental Health Standards, which contain a provision that one could argue suggests that Bomar should receive pre-sentence incarceration credit:

(a) An offender in a mental health ... facility is entitled to earn *good time credits* on the same terms as offenders in adult correctional facilities.

(b) An offender in a mental health ... facility should be eligible for *parole release consideration* on the same terms as offenders in adult correctional facilities.

Standard 7–9.15 (emphasis added). The Introduction to the Commentary states that such offenders "should be entitled to the good time *and like credits* ... [as] offenders in adult correctional facilities." (Emphasis added.) The Commentary explains that these offenders "are prisoners and should not be in a worse position as a result of their hospitalization than they would have been had they been sentenced directly to incarceration."

¶ 29 On its face, Standard 7–9.15 does not appear to apply to Bomar's situation, because, in Arizona, one cannot earn good time or parole release considerations for time spent in custody awaiting trial or sentencing. However, the Introduction to the Commentary and the Commentary indicate that the standard was intended to have a wider application by noting that the Standard should apply to "good time *and like credits*." (Emphasis added.) Bomar suggests that pre-sentence incarceration credits are like good time credits. However, good time credits and eligibility towards early parole differ from pre-sentence incarceration credits in that there is an element of rehabilitation and good behavior in earning good time credits or early parole. Unlike pre-sentence incarceration credits, good time credits are not earned by simply sitting in jail or prison. They are affirmatively earned by complying with the rules of the institution. Thus, they evidence rehabilitation. Pre-sentence incarceration credits, on the other hand, accumulate even for unruly and disruptive inmates simply by

virtue of their incarceration. Accordingly, the good time credits addressed in the Standard are distinguishable from the pre-sentence incarceration credits at issue here. Furthermore, we note that although this Standard has been in effect since 1994, no state has adopted it.

## CONCLUSION

¶ 30 We hold that Bomar is not entitled to a credit for presentence incarceration pursuant to A.R.S. section 13–709(B) against a period of hospital commitment ordered following a finding that he is guilty-except-insane. The judgment of guilty-except-insane and the commitment order are affirmed.

CONCURRING: REBECCA WHITE BERCH, Presiding Judge, NOEL FIDEL, Judge.

