99 P.3d 35

**STATE of Arizona, Appellee,**

v.

**Alfredo MIRANDA–CABRERA, Appellant.**

**No. 1 CA–CR 01–0926.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 21, 2004.

As Amended Dec. 2, 2004.

See 199 Ariz. 542, 19 P.3d 1258.

---

**12.** The Honorable Andrew W. Gould, a judge of the Yuma Superior Court, was authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to Ariz. Const. art. 6, § 31 and Ariz.Rev. Stat. Ann. § 12–145 through–147.

Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Diane Leigh Hunt, Assistant Attorney General, Tucson, Attorneys for Appellee.

Paul J. Mattern, Phoenix, Attorney for Appellant.

## OPINION

SNOW, Judge.

¶ 1 Defendant Alfredo Miranda–Cabrera appealed his convictions and sentences for one count of reckless second-degree murder, a class one felony and dangerous crime against children, and one count of endangerment, a class six felony. In a memorandum decision, we affirmed the convictions and the sentence for the endangerment offense but vacated the sentencing enhancement imposed pursuant to the dangerous crimes against children statute, Arizona Revised Statutes ("A.R.S.") section 13–604.01 (2001). Our Supreme Court vacated our decision and remanded this case for reconsideration in light of its opinion in *State v. Sepahi*, 206 Ariz. 321, 78 P.3d 732 (2003) (*Sepahi II* ). This is our opinion on reconsideration.

## FACTS AND PROCEDURAL HISTORY

¶ 2 We view the evidence in the light most favorable to upholding the jury verdicts. *State v. Farley*, 199 Ariz. 542, 543, ¶ 3, 19 P.3d 1258, 1259 (App.2001). In August 2000, Miranda–Cabrera agreed to guide Mr.

and Mrs. Saldivar and their thirteen-year-old son Jonathan on foot across the desert into the United States from San Luis, Mexico. Miranda–Cabrera told Mr. Saldivar that he regularly helped people illegally cross the border for payment and that he could deliver the family to the United States safely. Miranda–Cabrera's fee for guiding the Saldivars across the border was $1500 per person, payable after the family arrived in the United States.

¶ 3 The Saldivars lived in southern Mexico and were unfamiliar with desert climates, a fact known by Miranda–Cabrera. In the area where the border crossing was to take place, the daytime high in August ranged between 103 and 107 degrees Fahrenheit, and the soil temperature four inches below the surface reached as high as 118 degrees.

¶ 4 The Saldivars were caught by United States Border Patrol agents during their first attempt to enter the United States with Miranda–Cabrera as their guide. The agents returned the group to Mexico.

¶ 5 The group set out again after sunset two days later after Miranda–Cabrera promised that they would not have to walk as far on this crossing. After the entire group walked for "a good distance," Miranda–Cabrera pointed to a small mountain and told the Saldivar family to go there and wait for him while he scouted the area for Border Patrol agents. Miranda–Cabrera told the family to whistle for him periodically so he could find them in the darkness.

¶ 6 After whistling for two hours with no sight of Miranda–Cabrera, the Saldivars feared they had been abandoned. They walked toward a light in the distance for help, leaving most of their heavy water containers behind. By the time they got to the source of the light, they discovered it to be a fenced, unmanned power station. The family was lost and could find no relief from the sun; they were out of water, and their physical condition was rapidly deteriorating.

¶ 7 That evening, a Border Patrol agent found Mr. and Mrs. Saldivar. Mr. Saldivar was ill but conscious. Mrs. Saldivar's condition was very critical; she survived but with permanent physical injuries. The Saldivars' son, Jonathan, however, had gone off on his own in search of water and was found dead a short distance away. He had died from dehydration and heat exhaustion.

¶ 8 Miranda–Cabrera was charged with second degree-murder for Jonathan's death and two counts of endangerment, one each as to Mr. and Mrs. Saldivar. The charge included the allegation that the second degree murder of Jonathan was a dangerous crime against a child pursuant to A.R.S. § 13–604.01. The State chose to dismiss the endangerment count involving Mr. Saldivar before trial.

¶ 9 Miranda–Cabrera testified at trial that he merely allowed the Saldivars to travel with him as he made his way across the border. He denied he charged the family for his guiding services. He also testified that he returned for the family, but concluded they had returned to Mexico when he could not locate them. He took no steps to ensure they had not become lost in the desert. Two Border Patrol agents testified that the area in which the Saldivars had been walking had no landmarks and that even people who knew the area could easily become disoriented and lose their way.

¶ 10 The jury found Miranda–Cabrera guilty as charged on both counts. On the verdict form pertaining to the second-degree murder charge, the jury made a specific finding that Jonathan was a child younger than the age of fifteen.

¶ 11 The presumptive sentence for second-degree murder that is a dangerous crime against a child is twenty years. A.R.S. § 13–604.01(C) (An adult "who stands convicted of a dangerous crime against children in the first degree involving ... second degree murder of a child who is twelve, thirteen or fourteen years of age ... shall be sentenced to a presumptive term of imprisonment for twenty years.").[1] In imposing the mitigated

1. A finding that second-degree murder was a dangerous crime against children enhances the sentencing range. "Aggravating a sentence ... differs from enhancing a sentence.... Sentence enhancement raises the permissible range of punishment, while aggravation elevates a sentence within the previously defined range." *State v. Lara*, 170 Ariz. 203, 206 n. 2, 823 P.2d

sentence of seventeen years, the trial court found and weighed three aggravating factors and three mitigating factors. The aggravating factors were: (1) pecuniary gain, (2) mental and physical anguish suffered by the victim, and (3) mental anguish of the family. The mitigating factors were: (1) the crime was reckless rather than intentional, (2) no prior convictions, and (3) the need for consistency with sentencing in other cases of a similar nature. The court found that the mitigating factors outweighed the aggravating factors and sentenced Miranda–Cabrera to a mitigated sentence rather than the presumptive sentence. Miranda–Cabrera timely appealed.

¶ 12 After we affirmed both convictions and the sentence for endangerment, but before our reconsideration of sentencing in light of *Sepahi II*, the United States Supreme Court decided *Blakely v. Washington*, —— U.S. ——, ——, 124 S.Ct. 2531, 2543, 159 L.Ed.2d 403 (2004). We thus also consider the arguments raised by the parties concerning *Blakely*. However, because neither *Sepahi II* nor *Blakely* affects any of the analysis in that part of our memorandum decision in which we affirmed Miranda–Cabrera's convictions, his convictions are affirmed for the reasons stated in that decision. This opinion concerns issues pertaining only to the sentencing of Miranda–Cabrera.

## ANALYSIS

### A. Applicability of A.R.S. § 13–604.01

¶ 13 Miranda–Cabrera contends that the trial court erred by ruling that the reckless second-degree murder of thirteen-year-old Jonathan was a "dangerous crime against children" within the meaning of A.R.S. § 13–604.01. He contends that because *Sepahi II* did not explicitly overrule other cases that construed the statute to require that the crime be focused on a child as a child, there was insufficient focus on Jonathan here. We reject that argument.

¶ 14 *State v. Williams* was the first case interpreting the "dangerous crimes against

children" statute. 175 Ariz. 98, 854 P.2d 131 (1993). The defendant in that case was charged with reckless aggravated assault after driving his vehicle into the back of another vehicle, thereby injuring a child. *Id.* at 99, 854 P.2d at 132. "Aggravated assault" was one of the crimes listed in § 13–604.01(K)(1) (2001) as being a "dangerous crime against children." [2] *Id.* at 100, 854 P.2d at 133. The Supreme Court in *Williams* held that the legislature did not intend that § 13–604.01 apply to a case in which the assaulted child was "the unintended and unknown victim of someone's generalized unfocused conduct." *Id.* at 101, 854 P.2d at 134. It rejected the contention that "committing an offense 'against' a child within the meaning of § 13–604.01[was] the same as committing an offense, the victim of which happens to be a child." *Id.* at 103, 854 P.2d at 136. It concluded that "[b]ecause a 'dangerous crime against children' is defined as one 'committed against a minor under fifteen years of age,' the defendant's conduct must be focused on, directed against, aimed at, or target a victim under the age of fifteen." *Id.* It also stated that, under the statute, "a crime against a child is a crime against a child *as a child* or *in the capacity of a child.*" *Id.* at 101, 854 P.2d at 134 (emphasis added). It further held that it was the legislature's intent in enacting the statute "to punish severely those who prey upon children as opposed to those whose actions only fortuitously affect a child." *Id.* at 103, 854 P.2d at 136.

¶ 15 In *State v. Jansing*, we reached the same result in a fact situation that differed only because "the victim of defendant's aggravated assault was a passenger in her own car," and she, therefore, "knew that he was present and under fifteen." 186 Ariz. 63, 70, 918 P.2d 1081, 1088 (App.1996), *overruled on other grounds by State v. Bass*, 198 Ariz. 571, 576, ¶ 13, 12 P.3d 796, 801 (2000). In rejecting the State's contention that a dangerous crime against children had been committed, we recognized that such a crime requires that the "defendant's conduct must be focused on, directed against, aimed at, or tar-

---

70, 73 n. 2 (App.1990), *vacated on other grounds by* 171 Ariz. 282, 830 P.2d 803 (Ariz.1992).

**2.** Under the current version of the statute, the included crimes are enumerated in § 13–604.01(L)(1)(Supp.2003).

get a victim under the age of fifteen" and that the defendant must "prey specifically upon children." *Id.* (quoting *Williams,* 175 Ariz. at 102–03, 854 P.2d at 135–36).

¶ 16 In *State v. Samano,* we once again addressed § 13–604.01, finding that, for the section to apply, a defendant must "prey[ ] upon or target[ ] a child for the commission of a crime at least in part because the child is a child." 198 Ariz. 506, 510 n. 3, ¶ 13, 11 P.3d 1045, 1049 n. 3 (App.2000). The defendant in *Samano* had ordered a mother to hold her child while the defendant was burglarizing her residence, resulting in the defendant's conviction for kidnapping. *Id.* at 508, ¶ 3, 11 P.3d at 1047. Finding § 13–604.01 to be inapplicable in that case, we emphasized that "the element of preying on a child [was] conspicuously absent," *id.* at 510–11, ¶ 17, 11 P.3d at 1049–50, and that there was no showing that the defendant had "focus[ed] on or target[ed] a child as a child." *Id.* at 511, ¶ 18, 11 P.3d at 1050.

¶ 17 In *State v. Sepahi,* 204 Ariz. 185, 190, ¶ 15, 61 P.3d 479, 484 (App.2003), a panel from Division Two of this court followed *Williams* and *Samano,* holding § 13–604.01 to be inapplicable in a case in which a defendant intentionally shot a child who was under the age of fifteen years. In *Sepahi,* although the defendant "targeted" the victim in the sense of "intending" to assault her, there was no evidence that the defendant "prey[ed] upon or focus[ed] on or target[ed the victim] as a child," *id.* at 189, ¶ 14, 61 P.3d at 483 (quoting *Samano,* 198 Ariz. at 511, ¶ 18, 11 P.3d at 1050), or that the defendant was "peculiarly dangerous to children" or otherwise "pose[d] a direct and continuing threat to the children of Arizona." *Id.* (quoting *Williams,* 175 Ariz. at 102–03, 854 P.2d at 135–36).

¶ 18 Our Supreme Court granted the State's petition for review in *Sepahi* to clarify its holding in *Williams* and its interpretation of the targeting requirement of § 13–604.01. *Sepahi II,* 206 Ariz. at 323, ¶ 13, 78 P.3d at 734. The court vacated the decision of this court and noted the difficulty of reconciling "the notion that § 13–604.01 requires that the defendant pose 'a direct and continuing threat to children' with the clear statement in

*Williams* that the defendant need not know the age of the victim." *Id.* at 324, ¶ 17, 78 P.3d at 735 (citing *Williams,* 175 Ariz. at 102–03, 854 P.2d at 135–36). Thus, the court stated that *Williams* clearly indicates that the sentencing provisions of § 13–604.01 can apply to a defendant whose intention it is to "direct his criminal conduct only at adults ... when his victim turns out to be a child, even if the defendant quite reasonably believed to the contrary at the time the crime was committed." *Id.* The court reasoned that for the statute to apply, "the victim must [only] be the person against whom the crime is directed," and no requirement exists that the accused "must know the person is under fifteen." *Id.* (quoting *Williams,* 175 Ariz. at 103, 854 P.2d at 136).

■ ¶ 19 The court further explained that the "child *qua* child" language of *Williams* does not impose any requirement beyond targeting the victim. *Id.* at ¶ 18. The purpose of the language was to explain that "the statute requires such targeting, and not simply that the victim be a child." *Id.* The court concluded by reaffirming its holding in *Williams* that the State can only prove that a defendant committed a dangerous crime against a child by proving the defendant committed a crime enumerated by the statute that "focused on, [was] directed against, aimed at, or target[ed] a victim under the age of fifteen." *Id.* at ¶ 19 (quoting *Williams,* 175 Ariz. at 103, 854 P.2d at 136). Although the supreme court did not discuss *Jansing* and *Samano* in *Sepahi II,* we read the clarification provided in that opinion as substantially rejecting the rationale on which *Jansing* and *Samano* were based.

¶ 20 Miranda–Cabrera argues in his supplemental brief that this court is collaterally estopped from disturbing its previous findings in this matter on remand. We disagree with his characterization of our previous decision. Our previous decision in this matter was not a factual finding. Rather, it was the application of the legal standard in *Williams* that the child be targeted *qua* child. In our previous decision, we found that § 13–604.01 did not apply to Miranda–Cabrera because he did not differentiate between Jonathan, as a child, and Mr. and Mrs. Saldivar when he

abandoned the family in the desert. In *Sepahi II*, however, our Supreme Court made it clear that the "child *qua* child" language of *Williams* only requires the defendant to have directed his conduct toward a victim who happens to be under the age of fifteen for § 13–604.01 to apply. 206 Ariz. at 324, ¶ 18, 78 P.3d at 735. In light of that clarification, the Court vacated our previous decision in this matter and remanded it for reconsideration. This court reviews questions of law *de novo*. *State v. Malvern*, 192 Ariz. 154, 155, ¶ 2, 962 P.2d 228, 229 (App.1998). Thus, we are not estopped from applying the standard as clarified.

■ ¶ 21 Miranda–Cabrera further argues that this case is distinguishable from *Sepahi II* because he did not intend Jonathan's death. Thus, he reasons that Jonathan could not have been the target, aim, or focus of his reckless behavior as required by § 13–604.01.

¶ 22 In determining whether a child victim is a target of criminal behavior, however, the relevant inquiry is not answered by "the culpable mental state required for the commission of the offense." *Williams*, 175 Ariz. at 102, 854 P.2d at 135. As the *Williams* court observed, the dangerous crimes against children statute specifically includes second-degree murder and other crimes that can be committed with a reckless mental state as crimes that might qualify as dangerous crimes against children. *Id.* at 101, 854 P.2d at 134. The court explained by way of example that, if a person harassed a school bus and thereby recklessly injured a child passenger, he or she would have sufficient focus to satisfy the requirements of § 13–604.01. *Id.* Alternatively, if a person was driving recklessly, endangering the general public, and just happened to crash into a school bus resulting in an injured child, his or her focus would not satisfy the statute's requirements. *Id.* As this example illustrates, recklessness can either be focused or unfocused. Here, Miranda–Cabrera left Jonathan and his parents in the desert. Thus his conduct was sufficiently focused on Jonathan to enhance the sentence, even if the harm was not intended.

¶ 23 Miranda–Cabrera's own testimony at trial establishes these facts:

Q. What happened next?

A. We began to walk but the officer that already seen us, left for a certain distance and stopped and turned the lights off and I think he was thinking we were going to enter again. . . . I did ask the family to wait for us about 5 minutes. . . . Because from the place where we were, we could see clearly the patrol car and we could see when it moved away, if it did. . . . So we left from there and I asked them to wait there. . . . We were close to an hour and a half, more or less.

Q. Where were you?

A. I was away from them about 5 or 10 minutes, more or less, in the direction of where the officer was.

Q. Are you meaning that you were 5 or 10 minutes in distance from them?

A. Yes.

Q. What happened once you were confident that the patrolman left the area?

A. We thought maybe they had already left and I returned to the point where the family was and, when I returned, I didn't find them . . . . so we spent about 10 minutes looking for them, from 10 to 15 minutes.

Q. What did your brother and your cousin do once you couldn't find the Saldivar family?

A. Since we didn't find them, I thought that they had gone back and so I said, let's walk towards the town of Yuma so that immigration would catch us and return us back. And immigration caught us but not until next day.

Miranda–Cabrera's testimony on cross-examination was as follows:

Q. You told your attorney you agreed to guide them across the border; is that right?

A. Yes. Because I had already crossed once before, that was the reason.

Q. You said you discussed with the Saldivar family three or four times crossing them across the border?

A. Uh-huh. Yes.

¶ 24 More need not be established to determine that Jonathan was a sufficient focus

of Miranda–Cabrera's acts for purposes of triggering the enhanced sentencing range of the statute. Thus, Jonathan's act constituted a dangerous crime against children.

## B.  Sentencing

¶ 25 On June 24, 2004, the United States Supreme Court announced the rule that, except for prior convictions, "the prosecutor [must] prove to a jury all facts legally essential to the punishment." *Blakely,* 124 S.Ct. at 2543. The maximum sentence a judge may impose without violating *Blakely* is one based solely on "the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 2537 (citing *Ring v. Arizona,* 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)).[3] Miranda–Cabrera argues that the trial court violated *Blakely* in two different respects. First, it violated his *Blakely* rights by subjecting him to the enhanced sentencing range required by the dangerous crimes against children act without specific jury findings justifying that exposure, and second in finding certain aggravating factors in sentencing him to a mitigated sentence within that enhanced range.

■ ¶ 26 As a preliminary matter the State argues that Miranda–Cabrera, like the defendant in *Sepahi II,* 206 Ariz. at 324, n. 3, ¶ 19, 78 P.3d at 735 (citing *State v. Jones,* 185 Ariz. 471, 480, 917 P.2d 200, 209 (1996)), waived any claim he might have to resentencing pursuant to *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348, and *Blakely,* 124 S.Ct. at 2543, by failing to raise it at the sentencing hearing or in his opening brief. We note that *Blakely,* which clarified the rule set forth in *Apprendi,* was not decided when our Supreme Court rendered its decision in *Sepahi II.* 124 S.Ct. at 2543. Decisions of the United States Supreme Court that create new rules apply to all criminal cases still pending on direct review. *Griffith v. Ken-*

*tucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Because Miranda–Cabrera's case is still pending on direct review, we will consider the application of the rule set forth in *Blakely* to the sentencing in his case.

■ ¶ 27 The question presented here then is: did the jury verdict reflect, or did the defendant admit, facts sufficient to justify his sentencing under the enhanced sentencing range for dangerous crimes against children?

¶ 28 Miranda–Cabrera was charged by information for the second-degree murder of Jonathan Saldivar. The information further specified that the crime was a class one felony in violation of A.R.S. § 13–604.01, the dangerous crimes against children statute. Presumably as a result of this designation in the information, the jury verdict finding Miranda–Cabrera guilty of second-degree murder also explicitly found that Jonathan was under the age of fifteen. However, Miranda–Cabrera asserts that this finding alone is not sufficient to determine that his crime was a dangerous crime against children. He asserts that before the judge can enhance his sentencing range pursuant to § 13–604.01, a jury, not a judge, must find, not only that Jonathan was less than the age of fifteen, but also that Miranda–Cabrera's conduct was sufficiently directed at Jonathan.

■ ¶ 29 The State argues, however, that Miranda–Cabrera admitted these facts in his trial testimony. It is true that Miranda–Cabrera has never argued that his conduct was unfocused; he has instead argued that he did not intend Jonathan's death. The only evidence offered at trial was that the Saldivar family was the focus of Miranda–Cabrera's criminal conduct. As his own trial testimony quoted above demonstrates, Mi-

---

**3.** This formulation of the rule was initially promulgated in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in which the Supreme Court struck a sentence enhancement on an assault conviction. The trial court imposed the sentence enhancement when it found, without a jury, a racial motive for the assault. *Id.* at 471, 120 S.Ct. 2348. The defendant had entered a plea bargain but did testify at his sentencing hearing after

which the enhanced sentence was imposed. *Id.* at 470, 120 S.Ct. 2348. After promulgating the rule that the maximum sentence the court could impose must be based on the facts reflected on the jury verdict or admitted by the defendant, however, the Court did not find that Apprendi admitted to a racial motive. *Id.* at 490–97, 120 S.Ct. 2348. Thus, it held the trial court could not make the finding on its own consistent with the Sixth Amendment. *Id.*

randa–Cabrera testified that he agreed to guide the Saldivar family over the border, led them into the desert, left them there, and left the area without them. We agree with the State that, in this case, "the facts ... admitted by the defendant," *id.* at 2537 (citing *Ring,* 536 U.S. at 602, 122 S.Ct. 2428), establish that Miranda–Cabrera's conduct was sufficiently directed at Jonathan Saldivar to satisfy the "targeting" requirement for this offense to constitute a dangerous crime against children.

¶ 30 Even assuming that the facts admitted by the defendant in his testimony at trial are not sufficient to be facts "admitted by the defendant" for sentencing purposes, it was harmless error in this circumstance for the judge to enhance Miranda–Cabrera's range of sentence without a separate and specific finding that Miranda–Cabrera directed his conduct at Jonathan. *See Sepahi II,* 206 Ariz. at 324 & n. 2, 78 P.3d at 735 & n. 3 (because there was no assertion that the criminal conduct was not focused on the child victim, any *Apprendi* error would be harmless). Our Supreme Court has held that a violation of the Sixth Amendment's jury requirement with regard to sentencing factors may constitute harmless error if no reasonable jury would fail to find the factor's existence beyond a reasonable doubt. *State v. Dann,* 206 Ariz. 371, 374, ¶ 14, 79 P.3d 58, 61 (2003). In light of this direction by our Supreme Court, Miranda–Cabrera's own testimony that he led Jonathan's family into the desert and left the area without them makes the failure of the jury to make such a finding harmless. Thus, we decline to reverse the trial court's determination sentencing Miranda–Cabrera pursuant to § 13–604.01.

¶ 31 When sentencing Miranda–Cabrera pursuant to the enhanced range mandated by § 13–604.01, however, the judge found and weighed three additional "aggravating" factors that were not found by a jury. He balanced these aggravating factors against three "mitigating" factors, determined that the mitigating factors outweighed the aggravating factors, and imposed a mitigated sentence of seventeen years in prison for the murder of Jonathan. This sentence was three years less than the presumptive sentence authorized under A.R.S. § 13–604.01.

¶ 32 We need not remand for resentencing merely because Miranda–Cabrera's mitigated sentence might have been for a shorter period had the trial court not set off aggravating factors against the mitigating factors in imposing the mitigated sentence. Because the court's consideration of the sentencing factors did not result in the imposition of a sentence above that which the judge was entitled to impose based on "the facts reflected in the jury verdict or admitted by the defendant," the sentence imposed does not violate the Sixth Amendment. *Blakely,* 124 S.Ct. at 2537 (citing *Ring,* 536 U.S. at 602, 122 S.Ct. 2428).

¶ 33 As *Blakely* explains, the Sixth Amendment does not remove all discretion from the judge in sentencing. *Id.* at 2540. The Sixth Amendment is a reservation of a jury right, not a limitation on judicial power. *Id.* Thus, the Sixth Amendment vests in the jury the right to make all the factual determinations legally essential to the punishment imposed. *Id.* at 2543. Once a jury has found all of the facts required for the court to impose a punishment upon a defendant in a specific case, the judge is free to consider any other factors, both aggravating and mitigating, in imposing a lesser sentence. *Id.* at 2537 (citing *Ring,* 536 U.S. at 602, 122 S.Ct. 2428).

¶ 34 For example, indeterminate sentencing does not infringe on the province of the jury in violation of the Sixth Amendment under *Blakely. Id.* at 2540. Although "indeterminate [sentencing] schemes involve judicial fact finding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion," this exercise of judicial discretion is "not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty." *Id.* The traditional role of the jury is to find the facts that pertain to "whether [a] defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." *Id.*

Thus, whether the sentencing scheme is determinate or indeterminate, once the jury has found the facts necessary to impose a sentence within a statutory range, a judge may consider any additional sentencing factors in imposing a lesser sentence than the statute authorizes.

¶ 35 Because Miranda–Cabrera received a sentence in this case that was less than the sentence the judge could have imposed based solely on the facts found by the jury and admitted by Miranda–Cabrera, the trial court did not violate Miranda–Cabrera's constitutional rights pursuant to *Blakely* by finding additional aggravating factors in imposing a mitigated sentence.

## CONCLUSION

¶ 36 For the reasons explained in this decision, we affirm Miranda–Cabrera's sentence pursuant to A.R.S. § 13–604.01.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and SUSAN A. EHRLICH, Judge.