IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JAN 31 2006

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2004-0419 |
| Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| GUILLERMO CAMACHO URQUIDEZ, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR2004-0354

Honorable Paul E. Tang, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Karla Hotis Delord                                    Phoenix
                                                            Attorneys for Appellee

Isabel G. Garcia, Pima County Legal Defender
  By Alex Heveri                                                               Tucson
                                                           Attorneys for Appellant

E C K E R S T R O M, Judge.

¶1     Appellant Guillermo Urquidez was convicted after a jury trial of one count of aggravated assault with a deadly weapon and one count of possession of a deadly weapon as a prohibited possessor.  He was sentenced to the substantially aggravated term of twenty-five years for the aggravated assault and to a consecutive, presumptive term of ten years for the prohibited possession.  Urquidez argues that his indictment was duplicitous and that the trial court inadequately instructed the jury during the aggravation phase of his trial and erroneously imposed consecutive sentences.  We affirm.

¶2     We view the evidence in the light most favorable to sustaining the conviction. *State v. Mada*, 168 Ariz. 289, 289, 812 P.2d 1107, 1107 (App. 1991).  Urquidez was dating M. in early 2004.  M.'s father, G., was at her house one morning, fixing the back door, when he heard an argument between Urquidez and M.  When G. attempted to intervene, Urquidez pulled a gun from his jacket; said, "I am going to kill you, fucker"; and then pointed the weapon at G.'s face.  M. shoved Urquidez, who lost his balance for a moment, allowing G. to run into the house.  A few moments later, G. heard a gunshot outside.  M. told an officer who responded to the scene that Urquidez had shot at her father's vehicle.

¶3     At trial, Urquidez stipulated that he had previously been convicted of a felony and that his civil rights had not been restored.  After the jury reached its verdicts, the court held a second phase of the trial for the jury to consider evidence of aggravating factors for sentencing purposes.

**Duplicitous Indictment**

¶4 Urquidez argues that the charges against him were duplicitous. At the outset, we note Urquidez did not raise this objection before the trial court and therefore waived any claim of error based on it. As to most claims of error, we would nonetheless grant relief to the defendant if we were convinced that the error was both fundamental and prejudicial. *See State v. Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d 601, 607 (2005); *see also State v. Martinez*, 210 Ariz. 578, n.2, 115 P.3d 618, 620 n.2 (2005) ("Defendants who fail to object to error at trial do not, strictly speaking, 'waive' their claims. Rather, defendants who fail to object to an error below forfeit the right to obtain appellate relief unless they prove that fundamental error occurred."). However, our supreme court has recently used terminology suggesting, but not expressly concluding, that unpreserved claims of error concerning a defect in the charging document might not be subject to review of any kind. *See State v. Anderson*, 210 Ariz. 327, ¶¶ 13-20, 111 P.3d 369, 377-79 (2005) (noting strategic advantage to defendants in withholding such arguments until appeal; referring to such a claim, if not properly preserved, as "precluded" and "waived"; and making no mention of fundamental error review in that context).

¶5 However, we need not determine whether Urquidez would be entitled to relief if we determined the error was fundamental because we conclude the trial court committed no error of any kind in proceeding with Urquidez's trial on the two offenses separately charged. "An indictment is duplicitous if it charges more than one crime in the same count."

*Anderson*, 210 Ariz. 327, ¶ 13, 111 P.3d at 377. "Duplicitous indictments are prohibited because they fail to give adequate notice of the charge to be defended, present the potential of a non-unanimous jury verdict, and make a precise pleading of prior jeopardy impossible in the event of a later prosecution." *Id*. Here, the indictment charged prohibited possession and aggravated assault in two separate counts and thus, on its face, was not duplicitous.

**Consecutive Sentences**

¶6　　　　Urquidez contends the trial court erred by ordering consecutive sentences on offenses that arose from a single incident. We review *de novo* a trial court's decision to impose consecutive sentences in accordance with A.R.S. § 13-116. *See State v. Siddle*, 202 Ariz. 512, ¶ 16, 47 P.3d 1150, 1155 (App. 2002). Under § 13-116, a trial court may not impose consecutive sentences for the same act. The test set forth in *State v. Gordon*, 161 Ariz. 308, 778 P.2d 1204 (1989), is "used to determine whether defendant's conduct 'constitutes a single act, which requires concurrent sentences, or multiple acts, which permit consecutive sentences.'" *State v. Styers*, 177 Ariz. 104, 113, 865 P.2d 765, 774 (1993), *quoting Gordon*, 161 Ariz. at 312, 778 P.2d at 1208.

¶7　　　　First, we must decide which of the two crimes is the "ultimate charge—the one that is at the essence of the factual nexus and that will often be the most serious of the charges." *Gordon*, 161 Ariz. at 315, 778 P.2d at 1211. Then, we "subtract[] from the factual transaction the evidence necessary to convict on the ultimate charge." *Id*. If the remaining evidence satisfies the elements of the secondary crime, the crimes may constitute

4

multiple acts and consecutive sentences would be permissible. *Id*. We also consider whether "it was factually impossible to commit the ultimate crime without also committing the secondary crime." *Id*. Finally, we consider whether the defendant's conduct in committing the lesser crime "caused the victim to suffer a risk of harm different from or additional to that inherent in the ultimate crime." *Id*.

¶8 Here, the ultimate and more serious crime is aggravated assault with a deadly weapon, and the secondary crime is prohibited possession. *See* A.R.S. § 13-1204(A)(2), (B) (aggravated assault with deadly weapon is class three felony); A.R.S. § 13-3102(A)(4), (J) (possessing weapon as prohibited possessor is class four felony). If we subtract the evidence necessary to convict Urquidez for the aggravated assault—his pointing a gun at and threatening to kill G.—the remaining evidence is that Urquidez was a convicted felon whose civil rights had not been restored, that he already possessed a gun before this altercation occurred, and that he shot a gun at G.'s vehicle before driving away. This remaining evidence is sufficient to convict him of prohibited possession. *See* A.R.S. § 13-3101(A)(6)(b) (prohibited possessor one "[w]ho has been convicted . . . of a felony . . . and whose civil right to possess or carry a gun or firearm has not been restored"); § 13-3102(A)(4) (possession of deadly weapon by prohibited possessor constitutes weapons misconduct).

¶9 On the other hand, when we consider the transaction as a whole under the next factor of the *Gordon* test, we conclude it would have been impossible for Urquidez, as

5

a convicted felon, to commit the aggravated assault with a deadly weapon without also committing the crime of prohibited possession of a deadly weapon. Accordingly, we must consider the final factor under *Gordon*, whether G. was exposed to an additional risk of harm from the secondary crime of prohibited possession.

**¶10** In *State v. Carreon*, 210 Ariz. 54, ¶ 109, 107 P.3d 900, 921 (2005), our supreme court held that consecutive sentences were not permissible for prohibited possession and attempted murder under circumstances when the defendant's prohibited possession of a firearm did not expose the victim to "a risk that exceeded that inherent in the attempt on [the victim's] life." But in that case, the defendant did not use the gun against the victim a second time after the sequence of events that constituted the attempted murder. 210 Ariz. 54, ¶¶ 11-12, 107 P.3d at 906. Here, by contrast, Urquidez shot at G.'s vehicle after the assault on G. had been completed. We conclude that Urquidez's continued prohibited possession of a deadly weapon after G. ran into the house thus exposed G. to an additional risk beyond that inherent in being threatened at gunpoint. Because two of the three *Gordon* factors weigh in favor of viewing the two crimes as multiple acts, we hold the trial court was not required to impose concurrent sentences under § 13-116. It therefore did not err in imposing consecutive sentences because the two offenses were discrete and created separate risks of harm to the victim under the particular facts of this case.

**¶11** In a related argument, Urquidez maintains the trial court violated his right to have a jury determine whether the two offenses arose from separate acts. We review *de novo*

6

sentencing issues that involve statutory interpretation and constitutional law. *See State v. Bomar*, 199 Ariz. 472, ¶ 5, 19 P.3d 613, 616 (App. 2001). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435, 455 (2000). In *Blakely v. Washington*, 542 U.S. 296, 303-04, 124 S. Ct. 2531, 2537 (2004), the Court clarified that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings."

¶12 Under Arizona law, sentences for multiple counts must be imposed consecutively in the absence of any additional fact-finding by the court. A.R.S. § 13-708 ("[I]f multiple sentences of imprisonment are imposed on a person at the same time . . . [the] sentences imposed by the court shall run consecutively unless the court expressly directs otherwise, in which case the court shall set forth on the record the reason for its sentence."); *State v. Garza*, 192 Ariz. 171, ¶ 12, 962 P.2d 898, 901-02 (1998) (consecutive sentences are "default designation" if trial court does not set forth its reasons when imposing multiple sentences). Thus, the jury's verdicts finding Urquidez guilty of two separate offenses established the legal prerequisite for consecutive sentences without any further findings.

¶13 Urquidez observes correctly that a separate statutory provision, § 13-116, prohibits the imposition of consecutive sentences for offenses penalizing the same act. He

therefore claims the trial court's finding that the offenses arose from separate acts was a necessary predicate to his eligibility for consecutive sentences, and, as such, should have been made by a jury pursuant to the requirements of *Blakely*. But, in the context of a statutory scheme that presupposes consecutive sentences for multiple offenses, the trial court's finding did not technically render Urquidez eligible for a greater sentence. Rather, the court merely rejected a factual finding that would have required a lesser, concurrent sentence. Our supreme court has determined a defendant's right to a jury trial based on precisely such subtleties of statutory construction. *See State v. Martinez*, 210 Ariz. 578, ¶ 26, 115 P.3d 618, 623 (2005) (finding one *Blakely*-compliant or -exempt aggravating factor renders defendant constitutionally eligible for aggravated sentence even though other Arizona statutory provisions require additional fact-finding and weighing before aggravated sentence properly imposed); *see also State v. Johnson*, 210 Ariz. 438, ¶ 10, 111 P.3d 1038, 1041 (App. 2005) (judicial fact-finding does not violate *Blakely* if ultimate sentence does not exceed maximum authorized by jury verdict alone); *State v. Miranda-Cabrera*, 209 Ariz. 220, ¶ 34, 99 P.3d 35, 42-43 (App. 2004) (same). As a result, the trial court did not violate Urquidez's right to a jury trial when it found that, under the facts of this case, prohibited possession and aggravated assault were not the same act for purposes of § 13-116.

### *Blakely* "Mini Trial"

¶14 Urquidez argues that, in the aggravation phase of the trial, the court erroneously neglected to instruct the jury on the elements of each aggravating factor. But

8

Urquidez failed to object to those instructions below. Therefore, on this claim as well, he is not entitled to relief absent a showing of fundamental error and resulting prejudice. *Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d at 607.

**¶15**        We conclude that any error in the instructions would not have prejudiced Urquidez because the two aggravating factors found by the jury were not subject to meaningful factual dispute. In the aggravation phase, the jury found beyond a reasonable doubt that Urquidez had a prior felony conviction and had committed the instant offenses while on parole. Urquidez had stipulated to the existence of one prior conviction during the guilt phase of his trial[1] and did not contest the latter fact when his parole officer testified during the aggravation phase. Moreover, Urquidez has neither demonstrated nor suggested how more detailed jury instructions could possibly have changed the jury's findings on those aggravating factors. Given the lack of any prejudice, the alleged flaws in the jury instructions would not entitle Urquidez to relief.

**¶16**        Accordingly, we affirm Urquidez's convictions and sentences.

_____
PETER J. ECKERSTROM, Judge

---

[1]In determining sentence, the trial court was entitled to consider that Urquidez had been previously convicted of a felony without a jury trial on that fact. *See State v. Keith*, 211 Ariz. 436, ¶ 3, 122 P.3d 229, 230 (App. 2005) (prior convictions are exempt from requirements of *Blakely*). Urquidez's trial stipulation provided a sufficient factual basis for the court to consider that conviction in aggravation of his sentence. *See State v. Molina*, 211 Ariz. 130, n.6, 118 P.3d 1094, 1101 n.6 (App. 2005) (*Blakely*-exempt aggravating factors need be supported only by reasonable evidence in the record).

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge