NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

FEDERICO RODRIGUEZ, *Appellant.*

No. 1 CA-CR 14-0057

FILED 1-6-2015

Appeal from the Superior Court in Maricopa County
No.  CR2012-165742-003
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist
*Counsel for Appellee*

Ballecer & Segal, Phoenix
By Natalee E. Segal
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

**G O U L D**, Judge:

**¶1**       Federico Rodriguez ("Rodriguez") appeals his convictions and sentences for three counts of aggravated assault.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**       On the night of December 30, 2012, Martha B. was home with her boyfriend Gabriel G.  Martha's three children were also present in the home: Jose, who was 15 years old; Yullett, who was six years old; and Saul, an infant.  While Martha was watching television, she heard a loud knock on the front door.  She looked outside and saw a man in a black mask pounding on the door.  In response, Gabriel ran out the back door, climbed over the fence, and fled from the scene.

**¶3**       Martha asked the man to identify himself.  The man, later identified as defendant Federico Rodriguez, stated he was a police officer and told Martha to open the door.  She refused, and called 911.  Martha then heard someone breaking the glass on the door and saw an intruder forcing his way into the house.  Martha gathered her children and ran out the back door.

**¶4**       Martha and her children tried to escape by climbing over the back fence.  The family was then confronted by a man pointing a gun at them while they were trying to climb over the fence.  The testimony at trial was conflicting as to whether Rodriguez or his co-defendant, Florentino Josue Millan Erivez ("Erivez"), was the individual who pointed the gun at the victims.  Martha and Jose identified the man as Erivez.  At

---

[1] On appeal, this court views the evidence in the light most favorable to sustaining the conviction and resolves all reasonable inferences against defendant. *State v. Karr*, 221 Ariz. 319, 320, ¶ 2, 212 P.3d 11, 12 (App. 2008).

trial, however, Rodriguez testified that he was the individual who confronted the family in the backyard, holding his gun "forward . . . in a low ready position." Erivez corroborated this testimony, stating that by the time he made it into the backyard, Rodriguez was already marching the family back into the house.

¶5        Erivez or Rodriguez pointed the gun at Martha and ordered her to get off the phone, took the phone away from her, and disconnected the 911 call. Jose believed at this point that the individual was going to shoot him and his family. Erivez or Rodriguez then directed Martha and her children back inside the house.

¶6        Rodriguez ordered the victims to sit on the couches in the living room. Rodriguez then began questioning Martha about her "husband." Rodriguez instructed Erivez to tie Martha's hands while he searched the house. After threatening to use pepper spray if she did not comply with his request, Erivez was able to tie Martha's hands behind her back.

¶7        At some point, Villalobos entered the living room carrying a shotgun. Villalobos had been in the bedrooms searching the home. Upon entering the living room, Villalobos told Rodriguez that "it was all clear, no weapons, no drugs." Villalobos then questioned Martha, asking her if she "knew what they were there for," and advising her they were there "for the guns, the drugs, and the money."

¶8        Police officers arrived on the scene shortly after the defendants entered the home. One officer entered the back yard and observed Villalobos standing in the living room, the location where the victims were being held, holding a shotgun.

¶9        Rodriguez spoke to the police, advising them he was a bail recovery agent searching for a fugitive. Rodriguez stated that he recruited Erivez and Villalobos to assist him in searching for the fugitive in the victims' home. The officers became suspicious when Rodriguez was only able to provide a vague physical description of the fugitive. Rodriguez did not know the full name or date of birth of the fugitive, nor did he have a photo or any paperwork regarding the fugitive. As the officers continued to question Rodriguez, he kept changing the fugitive's name and physical description. Eventually, the officers arrested Villalobos, Rodriguez and Erivez.

¶10        Rodriguez later testified at trial that on the way to the victims' house, he gave Erivez a gun. Erivez confirmed this testimony,

adding that when Rodriguez gave him the gun, he told him to chamber a round before they entered the house. Erivez also testified that before they entered the victims' house, Rodriguez instructed him to get some zip ties in case they needed to secure someone at the house.

¶11 All three co-defendants were jointly indicted and tried together. The jury convicted Rodriguez of four counts of unlawful imprisonment, lesser-included offenses of counts two through five. In addition, the jury convicted Rodriguez on count six, aggravated assault (against Martha), count seven, aggravated assault (against Jose), and count eight, aggravated assault (against Yullett). Rodriguez timely appealed.

## DISCUSSION

### I. Rule 20 Motion

¶12 Rodriguez argues that the trial court erred in denying his motion for a judgment of acquittal on counts six, seven and eight. A Rule 20 motion for acquittal shall be granted by the trial court when no substantial evidence warrants a conviction. Ariz. R. Crim. P. 20(a); *State v. Davolt*, 207 Ariz. 191, 212, ¶ 87, 84 P.3d 456, 477 (2004). "If reasonable [persons] may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial." *Id*. "The substantial evidence required for onviction may be either circumstantial or direct." *State v. Pena*, 209 Ariz. 503, 505, ¶ 7, 104 P.3d 873, 875 (App. 2005). "[W]e view the evidence in the light most favorable to sustaining the [jury] verdict, and we resolve all inferences against the defendant." *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996).

¶13 Rodriguez contends the trial court erred in denying his Rule 20 motion because there was no evidence that he pointed a gun at any of the victims. Rodriguez further argues there was no evidence that he "knew, aided or assisted" Erivez in pointing a gun at the victims in the backyard of the house. We disagree.

¶14 There is substantial evidence showing that Rodriguez held the victims at gunpoint as they tried to climb over the fence. Rodriguez testified that he confronted the victims in the backyard and pointed a gun "forward . . . in a low ready position." Erivez also testified that he saw Rodriguez directing the victims into the house from the backyard. Although Martha and Jose identified Erivez as the man who pointed the gun at them, the jury was free to disbelieve all or part of their testimony, and conclude that Rodriguez pointed the gun at the victims. *See State v.*

*Clemons*, 110 Ariz. 555, 556-57, 521 P.2d 987, 988-89 (1974) (noting "credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury").

¶15 Even if the jury determined that it was Erivez who threatened the victims with the gun, then Rodriguez was criminally accountable for the actions of Erivez as an accomplice. *See* A.R.S. § 13-303(A)(3) (stating that an "accomplice" is accountable for the criminal acts of another). An accomplice is defined as one who, "with the intent to promote or facilitate the commission of an offense," solicits, commands, aids, or "provides means or opportunity for the other person to commit" a crime. A.R.S. § 13–301.

¶16 Rodriguez ran the bail recovery business, asked Erivez and Villalobos to join him for this job, and drove Erivez and Villalobos to the victims' home. All three co-defendants acted in concert and jointly participated in the home invasion. Villalobos searched the home while Erivez captured the victims and forced them back into the home at gunpoint. To assist Erivez in this task, Rodriguez gave Erivez a gun before they entered the house. Once the victims were confined in the living room, Rodriguez interrogated Martha as to the whereabouts of the fugitive. Villalobos also aided Erivez and Rodriguez by forcing the victims to remain in the living room with a shotgun, and interrogating Martha about the location of "the guns, drugs, and the money."

¶17 Accordingly, there is substantial evidence supporting Rodriguez's convictions for aggravated assault on counts six, seven, and eight.

## II. Sentencing Enhancement

¶18 Rodriguez was sentenced on count eight, aggravated assault against the minor victim Yullett, to a minimum enhanced prison term of ten years pursuant to the dangerous crime against children ("DCAC") statute. A.R.S. §§ 13-705(D), -705(P)(1)(b). Rodriguez argues this sentence was unconstitutional because all the facts necessary to prove the DCAC enhancement were not, as the trial court determined, inherent in the jury's verdict. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *Blakely v. Washington*, 542 U.S. 296 (2004) (holding that "[b]ecause the facts supporting petitioner's

exceptional sentence were neither admitted by petitioner nor found by a jury, the sentence violated his Sixth Amendment right to trial by jury.").

¶19 Rodriguez does not dispute that his aggravated assault conviction is one of the enumerated offenses under the DCAC statute, or that the victim Yullett was under fifteen years of age. A.R.S. § 13-705(P)(1)(b) (aggravated assault involving the use or threatening exhibition of a deadly weapon against a minor under fifteen years of age is a dangerous crime against children). Rather, Rodriguez asserts that the requisite DCAC finding his conduct was "focused on, was directed at … or targeted" at Yullett as a victim under the age of fifteen "was never tried to a jury."

¶20 We review *de novo* sentencing issues involving *Apprendi*. *State v. Urquidez*, 213 Ariz. 50, 53, ¶ 11, 138 P.3d 1177, 1180 (App. 2006). Even if an *Apprendi* error exists, we will not reverse if the error was harmless because no reasonable jury would have failed to find the facts necessary to enhance the defendant's sentence. *State v. Miranda-Cabrera*, 209 Ariz. 220, 226-27, ¶¶ 27–30, 99 P.3d 35, 41-42 (App. 2004).

¶21 In order for a defendant to be sentenced under the DCAC statute, his criminal "conduct must be focused on, directed against, aimed at, or target a victim under the age of fifteen." *State v. Williams*, 175 Ariz. 98, 104, 854 P.2d 131, 137 (1993); *see State v. Sepahi*, 206 Ariz. 321, 324, ¶ 19, 78 P.3d 732, 735 (2003). A DCAC crime cannot be committed unintentionally against a child; it must be committed as "a crime against a child *as a child* or *in the capacity of a child*." *Williams*, 175 Ariz. at 101, 854 P.2d 134 (emphasis added); *see Miranda-Cabrera*, 209 Ariz. at 223, ¶ 14, 99 P.3d at 38.

¶22 Here, there was substantial evidence showing that in committing the offense of aggravated assault against Yullett, Rodriguez necessarily targeted Yullett as a child under the age of fifteen. The evidence shows that Rodriguez or his accomplice pointed a gun at Yullett and her family in the backyard. In addition, on this record, the fact that Yullett was a young child was apparent beyond question to Rodriguez or his accomplice when he pointed the gun at Yullett; she was only six years old at the time of the offense. Accordingly, the court correctly determined that the targeting component of the DCAC statute was inherent in the verdict as to count eight, aggravated assault.

## CONCLUSION

¶23       For the foregoing reasons, we affirm Rodriguez's convictions and sentences.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama