NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

PORTER DERON LAND aka
DERON PORTER LAND, *Appellant.*

No. 1 CA-CR 21-0358
FILED 8-9-2022

Appeal from the Superior Court in Coconino County
No. S0300CR202000382
The Honorable Cathleen Brown Nichols, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**H O W E**, Judge:

¶1        This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for Deron Porter Land has advised this court that she has found no arguable questions of law and asks us to search the record for fundamental error. Land was convicted of multiple felonies and sentenced to enhanced, aggravated but concurrent prison terms, totaling 28 years. He has filed a supplemental brief in propria persona, which the court has considered. After reviewing the record, we affirm Land's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the judgment and resolve all reasonable inferences against Land. *See State v. Fontes*, 195 Ariz. 229, 230 ¶ 2 (App. 1998). In June 2014, Land, his ex-wife, Monica Miller; his son, Devionn Holmes; an associate, DeQuint Blunt; and Monica's children drove from Phoenix to Flagstaff in a silver-grey Dodge Charger and a blue Chevrolet Impala. The next day, Land and Miller used the Charger to case out a jewelry store under the guise of buying ring guards.

¶3        The next day, Blunt went to the jewelry store and after the person helping him, M.D., answered a phone call, he pulled out a handgun, pointed it at her head, and demanded to know where the safe and jeweler were. M.D. pushed Blunt and ran to the door, but Blunt tackled her. M.D. then pleaded that she had two kids at home. Blunt pressed his gun to the base of her neck and said that if she ever wanted to see her kids again, she better show him the location of the safe. At that time, a customer opened the front door and saw Blunt on top of M.D. The customer paused until M.D. told him that Blunt would kill him if he came into the store and that he should run and call 9-1-1. The customer ran and Blunt gave chase.

¶4        M.D. got up, hit the silent alarm, and ran to the back office for her gun. Land, wearing a white hoodie over his head, then entered the store, approached a diamond wedding ring case, and smashed it. Seeing Land

pilfering rings, M.D. fired a shot above Land's head, causing him to drop the rings, run to the other side of the store, and jump out a window, leaving his hammer behind. Blunt and Land eventually met up and escaped the area in the blue Impala. A witness saw both Blunt and Land abandon the car and Blunt dump his shirt into her garbage barrel.

¶5            During the ensuing investigation, police identified Joshua Ponder—Land's associate—as the person who rented the blue Impala. Although Ponder remembered renting the Impala and admitted knowing Land, he did not remember lending the Impala to Land nor returning it. The Charger had been rented by Crystal Jones—Ponder's love interest at the time—for a man named "Trig," whom she identified as Land during a police interview. The police also found Flagstaff hotel confirmations and searches for hotels and jewelry stores in her phone records. Additionally, Miller—who pled guilty to facilitation to commit armed robbery for her conduct on June 23 and June 24—told police that she and Land had visited the jewelry store the day before the robbery and that Land had been "casing" the place during the visit. She also told police that Land and an accomplice robbed the jewelry store the next day.

¶6            A grand jury indicted Land in October 2014 for one count of first-degree burglary, one count of attempted armed robbery, one count of kidnapping, two counts of aggravated assault, one count of armed robbery, and one count of criminal damage. At the time of the indictment Land was in custody with Maricopa County for a different case. The State placed a detainer on Land. He was eventually sentenced in the Maricopa County case in late 2017 and transferred to prison to complete his term, which ended January 17, 2020. When prosecutors searched the prison record system for Land, however, they searched under a different first name and did not find him, so he was not notified of the indictment until July 2019. Land was transferred to Coconino County pursuant to the detainer in August 2019. Land then moved to dismiss the charges with prejudice claiming a speedy trial violation under the Arizona and United States Constitutions and Arizona Rule of Criminal Procedure ("Rule") 8.

¶7            Land argued that the length of delay was presumptively prejudicial and that the State knew that Land was in prison the entire time, merely waiting to pursue the indictment until right before he was first set to be released in October 2019. Land claimed that the State acted in bad faith in waiting so long to try him and that the delay prejudiced him because the evidence against him was five years old. The State conceded that the delay was presumptively prejudicial but that it was not at fault for the delay because Land's name in the prison database differed from his name on the

indictment. Once the State found Land in prison, it notified him of the indictment and brought him to Coconino County. It also argued that Land did not show that the delay prejudiced his defense. The court initially denied Land's motion, finding no delay attributable to the State because his name differed in the prison record system and therefore, he had failed to show how the delay prejudiced him.

¶8            Land moved to reconsider, arguing that the State knew or should have known that he was in prison under a different name because the State knew his aliases. After an additional hearing, the court dismissed the indictment for the State's lack of due diligence in searching prison records for Land's aliases but did so without prejudice because the delay did not prejudice him.[1] The State indicted him under a new cause number. He again moved to dismiss with prejudice, which the trial court summarily denied.

¶9            At trial, M.D. testified during cross-examination that she could not positively identify Land from a photo lineup as one of the men that robbed her on June 24. She also testified, however, that she was never asked to identify Land as the man that entered the jewelry store on June 23 that bought the ring guards. On redirect, M.D. identified Land as the man that came to the store on June 23. Land objected, stating that the identification was unduly prejudicial and moved for a mistrial. The trial court denied the motion because any perceived prejudice could be addressed on re-cross-examination. During re-cross-examination, M.D. made clear that she could not identify Land as someone that had robbed her on June 24.

¶10           Holmes testified that the family drove to Flagstaff from Phoenix in two cars, but drove back to Phoenix in only the Charger, taking two trips because the whole group could not fit into the Charger. He claimed he did not know what happened to the blue Impala. Additional witnesses testified that Land was in Flagstaff the day of the robbery and at the jewelry store on June 23. An expert witness also testified that the hammer left in the jewelry store had Land's DNA on it. The jury convicted Land on all counts and found the offenses dangerous.

---

[1]      Both this court and the supreme court denied special action review on Land's argument that the dismissal should have been with prejudice. No. 1 CA-SA 20-0114 (appellate court order declining special action jurisdiction); No. CR 20-0235-PR (supreme court's denial of Land's petition for review).

¶11         In a bifurcated sentencing hearing, the trial court found that Land had five previous felony convictions. The State further argued that the aggravating factors of threatened infliction of serious physical injury and use of a deadly weapon were inherent in the jury's verdict, making the offenses were dangerous. After considering additional testimony, the court found four aggravating factors: (1) threatened infliction of serious physical injury; (2) use of a deadly weapon; (3) presence of accomplice; (4) the victims sustained serious emotional, physical, and financial harm. The court found all four aggravating factors applied to counts 1 through 4. For counts 5 and 6, the court found that factors 1 through 3 applied, but limited the fourth aggravating factor to the second victim's emotional harm. As a result, the court sentenced Land to enhanced, aggravated but concurrent terms of 20 years' imprisonment each for his convictions for first-degree burglary, attempted armed robbery, and both counts of aggravated assault. The court also sentenced him to enhanced, aggravated but concurrent terms of 28 years' imprisonment each for his kidnapping and armed robbery convictions. The court further sentenced him to time served for the criminal damage conviction. It calculated that he was entitled to 732 days of presentence incarceration credit as July 20, 2021.

¶12         Land claimed that he was entitled to additional presentence incarceration credit from October 2014—when the State first placed the detainer on Land, or from 2017—because the State should have known that he was in prison. The State argued that Land was not detained in Coconino County until August 2, 2019, and therefore should not have been credited 732 days, but 719. After argument, the court accepted the State's argument and accounting for the additional days since July 20, 2021, credited Land with 740 days of presentence incarceration credit as of August 11, 2021. Land timely appeals.

**DISCUSSION**

¶13         Land's counsel has advised this court that after a diligent search of the entire record, he has found no arguable question of law. In his supplemental brief, Land argues that the court erred by (1) dismissing the initial cause of action without prejudice; (2) permitting M.D. to identify him as the man in the jewelry store the day before the robbery; (3) sentencing him to an "aggravated" maximum and enhanced sentence; and (4) not granting him all his pretrial incarceration credit.

¶14         The standard of review of the asserted error depends on whether Land objected in the superior court. *State v. Romero*, 248 Ariz. 601, 603 ¶ 7 (App. 2020). If he objected and error occurred, the State must prove

the error was harmless. *State v. Henderson*, 210 Ariz. 561, 564–65 ¶ 8 (2005). Otherwise, this court reviews the asserted error for fundamental error. *See State v. Flores*, 227 Ariz. 509, 512 ¶ 12 (App. 2011). To prevail under the fundamental error standard, Land must establish that (1) error exists, (2) the error is fundamental, and (3) the error prejudiced him. *State v. Thompson*, 252 Ariz. 279, 293 (2022).

## I.     The Court Did Not Err in Dismissing the Indictment Without Prejudice.

**¶15**        Land argues that the court erred in dismissing the original indictment without prejudice because the delay caused the State's witnesses' memories to fade, so he could not rigorously cross-examine them. A trial court's ruling on a Rule 8 matter will be upheld unless the court has abused its discretion. *State v. Spreitz*, 190 Ariz. 129, 136 (1997). The court does not abuse its discretion if reasonable evidence supports its conclusion. *State v. Wassenaar*, 215 Ariz. 565, 570 ¶ 11 (App. 2007).

**¶16**        A dismissal with prejudice for a Rule 8 speedy trial violation is required when a defendant's constitutional rights have been violated under the Sixth Amendment—as applied to the states through the Fourteenth Amendment. *Humble v. Superior Ct. In & For Cnty. of Maricopa*, 179 Ariz. 409, 416 (App. 1993). In determining this, courts must consider (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of the right to speedy trial; and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 529, 531 (1972); *Doggett v. United States*, 505 U.S. 647, 650 (1992). Although a delay can become presumptively prejudicial as it approaches one year, triggering further inquiry into the other three factors, and can compound over time, presumptive prejudice alone usually cannot carry a constitutional claim. *Snow v. Superior Ct. in & for Cnty. of Maricopa*, 183 Ariz. 320, 325 (App. 1995) (quoting *Doggett*, 505 U.S. at 654). Accordingly, the "length of delay is the least important, while the prejudice to Defendant is the most significant." *Spreitz*, 190 Ariz. at 139.

**¶17**        The trial court did not err in dismissing the indictment without prejudice. Although the nearly two-year delay was presumptively prejudicial, the delay resulted from the State's mere negligence, *Barker*, 407 U.S. at 531 (1972) (negligence weighed less-heavily than bad-faith actions), and Land failed to show that he was actually prejudiced. To establish prejudice, Land must show that he was subject to pretrial incarceration, suffered anxiety or concern because of the delay, or had his defense impaired. *Id*. at 532. Because Land was incarcerated on an unrelated matter for the five years leading up to this case and was transferred immediately

upon being notified in 2019, Land was not incarcerated and did not suffer anxiety or concern because of the State's delay. Furthermore, a witness's diminished memory does not "by itself, constitute the type of substantial prejudice warranting" a constitutional claim. *State v. Broughton*, 156 Ariz. 394, 398 (1988). Rather, "a defendant must show that a defense witness became unavailable during the delay, that such witness would have testified on the defendant's behalf, the substance of the testimony, and that such testimony is not available through substitute sources." *State v. Lemming*, 188 Ariz. 459, 462 (App. 1997) (holding failure to show deceased witness's testimony was unavailable from another source was not enough to show prejudice). Indeed, other evidence from other sources belies Land's claimed prejudice from the delay. Lamb has not pointed to any favorable witnesses who became unavailable because of the delay nor demonstrated the substance of any testimony lost due to the passage of time. Moreover, expert testimony also showed that Land's DNA had been left on the hammer that the perpetrator of the June 24 robbery had left in the jewelry store.

**¶18**        Considering the other evidence available in this case, the trial court did not abuse its discretion in finding that Land's assertion of the witnesses' memory failed to establish actual prejudice under the circumstance. *See United States v. Beamon*, 992 F.2d 1009, 1014 (9th Cir. 1993) (conclusory and speculative claims of prejudice do not create a constitutional claim). Because Land failed to show how his defense was prejudiced by the delay, the court did not err in dismissing the indictment without prejudice. *See State v. Vasko*, 193 Ariz. 142, 147 ¶ 22 (App. 1998) (a defendant who fails to establish that his defense was prejudiced or that he was deprived of a fair trial has not established prejudice sufficient to warrant reversal of his conviction under a speedy trial right violation).

## II.    The Court did not Err in Permitting M.D. to Identify Land as the Man who Bought the Ring Guards.

**¶19**        Land argues that allowing M.D.'s identification without first holding a *Dessureault* hearing violated his due process rights. *State v. Dessureault*, 104 Ariz. 380, 383–84 (1969). A *Dessureault* hearing is a process in which a defendant can challenge a suggestive pretrial identification procedure that arguably taints an in-court identification. *Id*. Although Land concedes no unduly suggestive pre-trial identification, he argues that because he was the only person in the courtroom, sat at a table that had "defendant" on it, and was surrounded by his attorneys, M.D.'s in-court identification was unduly suggestive. But the supreme court rejected this exact argument in *State v. Goudeau*. 239 Ariz. 421, 456–57 ¶ 137–43 (2016).

The supreme court held that due process required a preliminary judicial inquiry only when the identification was procured under unnecessarily suggestive circumstances "arranged by law enforcement." *Id.* at 457 ¶ 139 (2016) (quoting *Perry v. New Hampshire*, 565 U.S. 228, 248 (2012)). Because M.D.'s in-court identification did not follow a suggestive pretrial identification procedure arranged by law enforcement, no court inquiry or independent hearing was required. *Id.* at 457 ¶ 141.

### III. The Trial Court did not Err in Sentencing Land.

¶20 Land argues that the trial court erred in sentencing him to the "maximum" terms of imprisonment. He claims the trial court could not sentence him to anything but the presumptive term under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), because the jury did not find any aggravating circumstances. *Blakely* errors are legal errors reviewed de novo. *State v. Urquidez*, 213 Ariz. 50 (App. 2005).

¶21 The trial court did not err in sentencing Land to aggravated and enhanced sentences. Under *Blakely*, the sentencing court can find that a defendant has historical prior felony convictions. *State v. Bonfiglio*, 228 Ariz. 349, 354 ¶ 21 (App. 2011); *Blakely*, 542 U.S. at 301. A judicial determination of a prior conviction constitutes an aggravating circumstance that exposes the defendant to the maximum term of imprisonment authorized by A.R.S. § 13–703. *Bonfiglio*, 228 Ariz. at 354 ¶ 21. Here, in a bifurcated trial, the court found that Land had five historical prior felonies, thereby making Land a category three repetitive offender under A.R.S. § 13–703(J) and exposing him to its maximum terms. *Id.*; A.R.S. § 13–701(D); A.R.S. § 13–703(J). Thus, Land's prior felony convictions alone automatically exposed him to the aggravated and enhanced range. *Bonfiglio*, 228 Ariz. at 355 ¶ 24.

### IV. The Court's Presentence Credit Error Did Not Prejudice Land.

¶22 Land argues that under A.R.S. § 13–712(B) he was entitled to presentence incarceration credit from October 27, 2014, the date that the State first lodged a detainer against Land, until he was sentenced. We review interpretation of statutes de novo. *Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 325 ¶ 11 (2014).

¶23 The court erred in providing Land 740 days of presentence incarceration credit as of August 11, 2021, but the error did not prejudice Land. Section 13–712(B) requires a court to credit against an imprisonment term all the time the defendant "actually spent in custody pursuant to an offense until the prisoner is sentenced." "Pursuant to an offense" means the time in prison for that offense and that "presentence incarceration credit is

unavailable for time served based on a charge other than that for which the defendant is being sentenced." *State v. Cecena*, 235 Ariz. 623, 625 ¶ 7 (App. 2014). Here, Land was incarcerated under the Maricopa County matter until January 17, 2020. Thus, the maximum credit allowed Land would be from January 17, 2020, which would amount to less presentence incarceration credit than the amount the court gave. *State v. Bridgeforth*, 156 Ariz. 58, 59–60 (App. 1986) (decreasing presentence incarceration credit to reflect time from release date of other conviction rather than arrest date). We decline, however, to correct the illegally lenient sentence because the State did not properly appeal or cross-appeal. *State v. Dawson*, 164 Ariz. 278, 286 (1990).

**¶24** We have also reviewed the record for reversible error, *see Leon*, 104 Ariz. at 300, and find none. All the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, the Rules of Evidence for Courts in the State of Arizona, and constitutional and statutory rights. Counsel was appointed to Land, who represented him through trial and sentencing. We decline to order more briefing. Upon the filing of this decision, defense counsel shall inform Land of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Land shall have 30 days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.

## CONCLUSION

**¶25** For the reasons stated, we affirm Land's convictions and sentence.



AMY M. WOOD • Clerk of the Court
FILED: AA

9